CAPITAL GARAGE COMPANY *v.* MAX L. POWELL.

October Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed November 20, 1922.

*Motion for Directed Verdict—Evidence Construed Most Favorably to Other Party—Assumpsit—When Available for Wrongful Detention or Conversion—Necessity for Plaintiff to Establish His Title—Liability of Assignee—Witnesses—Right to Explain Testimony—Money Received—Corporations—Stockholders—Effect of Transfer of Capital Stock—Jury Question—Exceptions to Findings of Court—Evidence—Harmless Error—Admission of Assignment in Connection With Testimony of Witness.*

1. Upon exception to the granting of defendant's motion for a directed verdict, the evidence must be viewed in the light most favorable to the plaintiff.

2. Assumpsit will not lie for the wrongful detention of personal property nor for the wrongful conversion of it unless it appears that money or its equivalent has been received therefor.

3. In an action of assumpsit to recover the value of goods claimed to have been converted by the defendant, the mere discrediting of defendant's title is unavailing, for it is essential to a recovery that plaintiff establish his own title, without which defendant's relation to the property is immaterial.

4. The assignee of a corporation which was unlawfully in possession of personal property of another corporation is not liable for such property of the latter corporation as may have been disposed of by his assignor, unless such assignee received pay for it.

5. A witness has the right to explain his testimony and to correct a former statement made by him, and when this is done at once and there is nothing to throw doubt on his explanation, the same should be accepted; but where the explanation comes at another term and in the trial of another case, and amounts to a practical denial of some of his previous testimony, both statements should go to the jury.

6. If defendant collected accounts belonging to plaintiff, whether such accounts accrued during the operation of a Maine corporation to which all of plaintiff's capital stock had been transferred, or from the sale of plaintiff's property by a Massachusetts corporation which carried on business in plaintiff's name after the Maine corporation ceased doing business in the State, to that extent it may recover, because an assignment by the Massachusetts corporation of the assets of the business was ineffectual to pass title to plaintiff's property; but if the accounts collected were the result, solely, of the operations of the Massachusetts corporation, and did not include the proceeds of any of plaintiff's property, the plaintiff cannot recover merely because the Massachusetts corporation did business in plaintiff's name.

7. Stockholders are not the corporation, neither do they own the property of the corporation in the sense of having legal title to it, even though all the stock is owned by one person.

8. A transfer of the capital stock of a corporation does not affect the ownership of the property of the corporation.

9. In an action of assumpsit to recover money collected by the defendant on certain accounts, *held*, that, on the evidence, whether the plaintiff owned such accounts was a question for the jury.

10. In an action of assumpsit to recover for money collected by defendant on certain accounts which plaintiff claimed to own, an exception by plaintiff to what it termed a finding by the court that such money did not belong to the plaintiff was without merit, where the court did not so find, but merely stated in disposing of defendant's motion for a directed verdict, that there was no evidence tending to show that such money belonged to the plaintiff.

11. In an action of assumpsit to recover for property claimed to have been converted and for money collected by defendant on certain accounts claimed to have been owned by plaintiff, the exclusion of a federal income tax return for the year 1919, offered by the plaintiff to show that the business was then being done by it and the value of the property, if error, was harmless, where on the evidence nothing was recoverable but the accounts collected by defendant, and no claim was made but that a Maine corporation, licensed to do business in the

State, which acquired all of plaintiff's capital stock in November, 1919, had done business in the State, while it operated, until January 22, 1920, in the name of the plaintiff.

12. Where all of plaintiff's capital stock had been sold to a Maine corporation which operated the business for a short time in the State and then ceased, immediately after which a Massachusetts corporation carried on the business in plaintiff's name and subsequently made an assignment of certain accounts and other property, of which plaintiff claimed to be the owner, to the defendant, who collected the accounts and retained the proceeds, in an action of assumpsit to recover the money thus collected such assignment of the Massachusetts corporation was admissible in connection with defendant's testimony as to the accounts collected, but not as independent evidence nor as evidence of defendant's title to any of the property therein enumerated.

ACTION OF CONTRACT. Pleas, the general issue and a special plea. Trial by jury at the March Term, 1922, Washington County, *Wilson,* J., presiding. At the close of the plaintiff's evidence the court directed a verdict for the defendant. The plaintiff excepted. The opinion states the case. *Reversed and remanded.*

*H. C. Shurtleff* for the plaintiff.

*Max L. Powell, Hale K. Darling,* and *John W. Gordon* for the defendant.

SLACK, J. This is an action of general assumpsit to recover money which the defendant has collected on accounts plaintiff claims to have owned, and the value of certain personal property of the plaintiff's which it is claimed the defendant has converted to his own use. The trial was by jury.

[1] At the close of the plaintiff's evidence the court, on motion, directed a verdict for the defendant to which the plaintiff saved an exception. This exception presents the first question for review. In disposing of it the evidence must be viewed in the light most favorable to the plaintiff.

The evidence fairly tended to show that the plaintiff, a Vermont corporation, for many years prior to November, 1919, conducted a general garage business in a building located on Court Street in the city of Montpelier; that its capital stock was divided into eight hundred shares of $10 each; that early in November, 1919, George H. Almon and Ernest F. Dillon, the then owners, in equal amount of all of said stock, sold and transferred the same to the Burnell-Faulkner Company, a Maine corporation then licensed to do business in this State, and each took in part payment of his stock a promissory note of the Burnell-Faulkner Company secured by a pledge of four hundred shares of the capital stock of the plaintiff; that the Burnell-Faulkner Company took possession of the building theretofore occupied by the plaintiff, together with the personal property, consisting of machinery, automobile accessories, supplies, *et cetera,* and continued the business under the name of the plaintiff until January 22, 1920, when it ceased to do business in this State; that thereafter, but under what arrangement did not appear, the Burnell-Faulkner Company, a Massachusetts corporation, incorporated January 22, 1920, and licensed to do business in this State on or about April 12, 1920, carried on business at the same place and under the name of the Capital Garage Company until October 15, 1920, when, being indebted to the defendant, who was one of its directors, in a large amount, it assigned, or attempted to assign, to him, all of its accounts receivable at its Burlington and Montpelier branches, and such of its other assets, including fixtures, machinery, and merchandise at the places named, as the defendant might select, sufficient to pay his indebtedness; that the defendant took possession of the building, and personal property therein, January 1, 1921, and carried on the business until the following September, when he turned it over to Kenney and Chase under an agreement that they would make an inventory of the property, and pay for it "after the winter's business"; that the inventory was made, but that no price was ever agreed upon for the property and nothing was paid for it; that September 22, 1921, there being a balance due and unpaid on the Almon and Dillon notes, they caused the stock which they held for the purpose above stated to be sold, Almon buying the stock pledged to Dillon, and Dillon buying the stock pledged to Almon; that at some time after the defendant took possession of the property,

and before this suit was brought, the plaintiff made demand on him for the possession of all the property then in his hands and he refused to deliver the same or any part of it. The evidence tended to show further that when Almon and Dillon sold their stock to the Maine corporation, they reserved all of the book accounts then due that belonged to the plaintiff, and agreed to pay certain bills which it owned; that most of the machinery, and some of the other property, in the garage when the Maine corporation took possession, was still there at the time this suit was brought; that at some time, the date not appearing, two or three thousand dollars worth of automobile parts were shipped to Springfield, Massachusetts, in an auto truck which was in charge of one of the Burnell-Faulkner Company's employees; that during the time that the defendant was in control of the business, he collected about $2,200 on accounts, and auto accessories and supplies were sold whenever there was an opportunity, and on one occasion some oil was taken to Burlington; that defendant added to the stock from time to time, but did not keep it good; that in trying to negotiate a sale of the business to Landry and Currier in November, 1920, the defendant represented that he owned the business. The evidence also tended to show the value of some of the property in existence when this suit was commenced.

[2] It is not apparent upon what ground this action can be maintained for the tangible property that came into the possession of the defendant. Assumpsit will not lie for the wrongful detention of personal property nor for the wrongful conversion of it unless it appears that money or its equivalent has been received therefor. *Scott* v. *Lance,* 21 Vt. 507; *Stearns* v. *Dillingham,* 22 Vt. 624, 54 A. D. 88; *Winchell* v. *Noyes,* 23 Vt. 303; *Kidney* v. *Persons,* 41 Vt. 386, 98 A. D. 595; *Saville, Somes & Co.* v. *Welch,* 58 Vt. 683, 5 Atl. 491. And while the law will presume that the sales of the auto accessories and supplies made while the defendant was in charge of the business were for cash or its equivalent, there was no showing as to what articles were sold, for how much, or who owned them.

[3, 4] The plaintiff stoutly maintains that the defendant never had title to any of the property that came into his possession for the reason that the Maine corporation did not acquire title to the property of the plaintiff, that the Massachusetts cor-

poration was a mere intermeddler, and operated entirely without authority, and that the assignment from it to the defendant was void. Assuming all this to be true, it cannot avail the plaintiff unless it shows that it had title to the property that came into the possession of the defendant. Unless the plaintiff had title to such property, it is immaterial what the defendant's relation to it was. Suppose that the Massachusetts corporation, which assumed to carry on the business from the latter part of January, 1920, until the latter part of the following October, acted entirely without authority, was a mere intermeddler, as claimed by the plaintiff, that when the Maine corporation ceased to do business, the Massachusetts corporation unlawfully took possession of the garage and the accessories and supplies therein, and later sold all or part of said personal property, would the defendant be liable for the property so disposed of by the Massachusetts corporation? Certainly not, unless it appeared, at least, that he had received pay for it. Again, suppose that while the Massachusetts corporation was doing business it purchased accessories and supplies other than those that belonged to the plaintiff, would the mere fact that it was doing business in the name of the plaintiff, without right or authority, vest the title to such property in the plaintiff? The plaintiff, in seeking to discredit the defendant's title, has wholly overlooked its own, which is quite as essential to a recovery. Not only has it failed to show title to the accessories and supplies which the evidence tends to show were sold while the defendant was conducting the business, but it has failed to show what those articles were or the price for which they were sold.

[5]   It remains to consider whether the plaintiff made a case for the jury respecting the accounts. The defendant testified in the trial of another case between the same parties, and, also in the trial of this case, that he had collected about $2,200 on accounts that were assigned to him by the Massachusetts corporation. We understood from what was said in argument that the plaintiff claimed that these accounts were the ones that were reserved at the time Almon and Dillon sold their stock to the Maine corporation, but such claim is not made in its brief, nor could it well be made in view of the position taken by the plaintiff in the trial below. The claim briefed is that the jury could fairly infer from the defendant's testimony given in the trial

of the other case "that such accounts resulted from the sales of the supplies of the Capital Garage Company to customers in the ordinary course of business." The defendant testified in that trial that he had "collected whatever belonged to the Burnell-Faulkner Company, or doing business as the Capital Garage Company"; that in doing that he had collected between $2,000 and $3,000 on accounts which were payable to, stood in the name of, the Capital Garage Company. In the trial of this case he denied that he collected accounts that were payable to the Capital Garage Company, and denied that he so testified in the other trial, and testified that the only accounts he had collected were the ones assigned to him by the Burnell-Faulkner Company, "their accounts—Burnell-Faulkner accounts." A witness has the right to explain his testimony and to correct a former statement made by him, and when this is done at once and there is nothing to throw doubt on his explanation the same should be accepted by the court. But where, as here, the explanation comes at another term and in the trial of another case and is of the character shown by the record, both statements should go to the jury.

[6-9] If the defendant collected accounts that in fact belonged to the plaintiff, whether such accounts accrued during the operation of the Maine corporation or from the sale of the plaintiff's property by the Massachusetts corporation, to that extent it may recover, because the assignment to the defendant by the latter corporation was ineffectual to pass title to plaintiff's property. On the other hand, if the accounts collected by the defendant were the result, solely, of the operations of the Massachusetts corporation, and did not include the proceeds of any of plaintiff's property, the plaintiff cannot recover merely because that corporation did business in plaintiff's name. It should be borne in mind that the stockholders are not the corporation, neither do they own the property of the corporation in the sense of having legal title to it, and this is true even though all the stock is owned by one person. A transfer of the capital stock does not affect the ownership of the property of the corporation, that still belongs to the corporation. And so it is, that regardless of who owned the capital stock of the plaintiff, the corporate property, for aught that appears in this case, belonged to the plaintiff. Whether it owned the accounts collected by the defendant was a

question for the jury, since the fact that those accounts, or some of them, were payable to plaintiff, stood in its name, as testified to by the defendant in the trial of the other case, was evidence of its ownership.

[10] The plaintiff excepted to what it termed a finding by the court that the money collected by Powell did not belong to the plaintiff. The court did not so find; it merely stated, in substance, in disposing of defendant's motion, that there was no evidence tending to show that such money belonged to the plaintiff. The exception is without merit.

[11] The plaintiff excepted to the exclusion of the federal income tax return for the year 1919. It is claimed that it tends to show the value of the property, and that the business was then being done by the Capital Garage Company. Since, on the evidence, nothing is recoverable but the accounts collected by the defendant, and no claim being made but that the Maine corporation did business in the name of the plaintiff while it operated, until January 22, 1920, the exclusion of this evidence, if admissible, was harmless.

[12] Defendant's "Exhibit B," the assignment from the Massachusetts corporation to the defendant, was received in connection with the defendant's testimony relative to the accounts which he had collected, not as independent evidence, nor as evidence of defendant's title to any of the property therein enumerated. For the purpose for which received, it was admissible.

*Judgment reversed and cause remanded.*