WALTER PICKNELL *v.* W. J. BEAN.

May Term, 1925.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1925.

*Appeal and Error—Question Not Raised Below—View of Evidence on Motion for Directed Verdict—When Question for Jury—Landlord and Tenant—Abandonment of Lease—Lack of Justification Therefor—Waiver of Right of Abandonment.*

1. Question whether court erred in permitting defendant to withdraw plea in abatement without imposing costs will not be considered in Supreme Court, where not raised below.

2. In considering whether trial court erred in directing verdict for defendant, evidence must be viewed in light most favorable to plaintiff.

3. In action of contract to recover for labor performed and money expended in and about management of defendant's farm, *held* that if there was any substantial evidence supporting plaintiff's claim, the case was for jury.

4. Where intelligent and fair-minded men may reasonably differ in conclusion to be drawn from evidence, it cannot be said as matter of law that there is no evidence.

5. That landlord failed to furnish financial assistance in feeding stock, upon request of tenant operating farm "on halves," when he was not bound so to do under lease, *held* insufficient cause to justify tenant in abandoning lease and suing for labor performed and money expended in management and operation of farm.

6. Tenant, operating farm "on halves," under terms of oral agreement made with landlord in May, from that time until fall of the same year, without objection to landlord's failure to execute written lease in accordance with such agreement, and with full knowledge of claimed breach, *held* to have waived breach of contract, in this respect, and not to be justified by reason thereof in abandoning lease and suing for labor performed and money expended in management and operation of farm.

ACTION OF CONTRACT. Plea, general denial. Trial ·by jury at the June Term, 1923, Orange County, *Thompson,* J., presiding. At close of all the evidence, the court directed a verdict for defendant. The plaintiff excepted. The opinion states the case. *Affirmed.*

*Roland E. Stevens* for the plaintiff.

*F. G. Bicknell* and *H. K. Darling* for the defendant.

SLACK, J. The action is contract to recover for labor performed and money expended by one Picknell in and about the management and operation of defendant's farm from April 1, 1921, to February 14, 1922. Picknell deceased after this suit was commenced, and the same has since been prosecuted by his administrator who had leave to enter for that purpose. The administrator is herein referred to as plaintiff. The declaration contains only the so-called common counts. Defendant entered a special appearance and filed a plea in abatement and also a motion to dismiss, both based on the insufficiency of the service of the writ. After hearing, defendant was permitted to and did withdraw both dilatory pleas, enter a general appearance, and go to trial on the merits of the main issue on what was treated as a general denial. The plaintiff saved some exceptions to rulings made concerning the order of hearing and disposition of the dilatory pleas. These exceptions, save one, are expressly or impliedly waived.

[1] The court as a matter of discretion permitted defendant to withdraw his plea in abatement. Plaintiff excepted to this on the ground that he was entitled to a jury trial on the issue raised by this plea. The merits of this claim are not considered, since the claim is now abandoned. Plaintiff here invokes the aid of the rule stated in 31 Cyc. 601, that leave to withdraw a pleading will usually be given, where the other party will not be prejudiced, upon such terms as may be just, and says that he was prejudiced by the court's action since no terms as to payment of costs were imposed on defendant. This question was not raised below and for that reason, under the rule frequently stated, will not be considered here.

[2-4] This brings us to the only question of importance in the case, namely, whether the court erred in directing a verdict

for defendant. In considering this question, the evidence must be viewed in the light most favorable to the plaintiff. *Strong & Jarvis* v. *Oldsmobile Company of Vermont,* 96 Vt. 355, 120 Atl. 100; *Kimball* v. *New York Life Ins. Co.,* 96 Vt. 19, 146 Atl. 119; *Capital Garage Co.* v. *Powell,* 96 Vt. 227, 118 Atl. 883. If there was any substantial evidence supporting his claim, the case was for the jury. *Cummings, Admr.* v. *Town of Cambridge,* 93 Vt. 349, 107 Atl. 114. Where intelligent and fair-minded men may reasonably differ in the conclusion to be drawn from the evidence, it cannot be said as a matter of law that there is no evidence. *Partridge* v. *Cole,* 96 Vt. 281, 119 Atl. 398, 32 A. L. R. 854.

[5, 6] With these rules in mind, we pass to the examination of the evidence. It appeared that on October 14, 1919, the defendant leased to Picknell, his executors and administrators, "on halves," a farm in Thetford, Vermont, together with certain live stock, fowls, and farming tools, for at term commencing the 18th of the same month and ending April 1, 1921; that Picknell moved onto the farm and operated it under the lease during the term thereof; that during 1920 additional live stock was purchased by defendant and placed on the farm—more than the farm would winter; that this was done with the approval of Picknell, who agreed to and did cut hay elsewhere on shares that season to help winter the stock; that in the spring of 1921, probably in May, defendant was at the farm, and a new arrangement was agreed upon by and between him and Picknell, which was to run for one year from April 1, 1921, and from year to year thereafter; that this arrangement was the same as the one embodied in the former lease, except it included the additional stock which had been placed on the farm, Bean was to repair the house at his own expense, and Picknell was to have the right to use the horses off the farm and to sell the cows or other live stock without waiting to consult Bean when necessary. There was some talk about enlarging the barn sometime, but the evidence did not tend to show that that was to be done as part of the new agreement. Picknell wanted a lease embodying the new agreement, and told Bean that he would not carry on the farm longer unless he had such lease, and Bean agreed that he should have it. The day following the consummation of the new agreement, Bean went to White River Junction on his way home (he lived in Connecticut) to have the same put in writing by the lawyer whom he

and Picknell had agreed should do that work, but the lawyer was away, and after leaving instructions to have the lease drawn, Bean continued on his journey. The lease never was executed, or drawn, and never was mentioned again by either party, so far as appears, unless Bean wrote the lawyer about it, which is doubtful. The failure of the defendant in this respect, that is to furnish a written lease as he agreed to do, was the only breach by him of the May, 1921, agreement which the evidence tended to show; and this was the only breach which it is seriously claimed entitled Picknell to abandon his contract and seek the redress here claimed.

Without pausing to consider what Picknell's rights might have been, because of Bean's failure to have the agreement reduced to writing as he agreed to do, had Picknell seasonably asserted such rights it is enough to say that he did not. So far as appears, he never mentioned the lease to Bean after Bean went away from the farm in May, 1921, and plaintiff's evidence shows that Picknell operated the farm under the terms orally agreed upon without objection or remonstrance by either party until "somebody got mad," in the fall of 1921, when the claim upon which this action is predicated had birth. Mrs. Picknell, who was the only witness on this subject, testified as follows: "Q. You considered and also Mr. Picknell considered and believed all through the summer that you were operating that farm on shares, didn't you? A. Yes, sir. Q. And Mr. Picknell has told you that, hasn't he? A. Yes, sir. Q. Now you kept thinking that and knowing that up until the time that somebody got mad, isn't that true? A. Yes, sir. Q. Then after you got mad, things were different, weren't they? A. Yes, sir. Q. The share arrangement between Mr. Picknell and Mr. Bean gave way to $3.50 a day for him and $1.00 a day for you, didn't it? A. Yes, sir. * * * * * Q. Can you give me the date, Mrs. Picknell, when it was that Mr. Picknell and you decided that you wouldn't call it that you were occupying that farm on shares? A. No, sir, I can't. Q. Was it in November? A. I can't tell you. Q. Was it earlier or later than November? A. I don't know. Q. Then we will put in this way, you changed your mind from the share proposition to a per diem proposition after you and Mr. Picknell got provoked, is that true? A. Yes, sir. Q. When did you get provoked? A. When we couldn't get any letter or no word from Mr. Bean * * * Q. Then you

were share tenants up until fall, then when you couldn't get a letter you changed over to per diem tenants, is that right? A. Yes.''

That Picknell treated the May, 1921, agreement as in effect until the fall of 1921, or the winter following, is evidenced by the letters and statements which he sent Bean. In a statement showing the sale of pigs, apples, and potatoes, which he sent Bean under date of November 21, 1921, he wrote: ''The pigs and apples are on shares but the potatoes I sold for you.'' On November 28, 1921, he wrote Bean: ''Your letter at hand. If you want a monthly statement sent you each month when you are letting the farm on halves you will have to find someone else to come on here for I am not going to do it. * * * * We wrote you that we had 7 buckets of McIntosh Reds and asked you what you wanted done with your half,'' etc. Later in the same letter he wrote concerning the potatoes: ''I had 50 bu. of potatoes and I picked out 20 bu. of the best and sold them as your half and keep the smaller ones to eat our selfs.'' And in a statement which he sent Bean as late as January 20, 1922, the creamery checks are entered: ''Creamery checks on shares;'' and certain items for seed grain and potatoes are designated therein as ''Paid out for seed not on shares.'' Moreover, that statement includes charges in October, November, and December for labor and material in repairing the buildings amounting to approximately $180.00, which repairs, so far as appears, Picknell had no authority to make unless he was acting under the May, 1921, agreement. That Bean understood that Picknell was operating under that agreement is shown by his letter to Picknell under date of November 7, 1921, which was in answer to Picknell's letter of November 28, where he wrote: ''Replying to your letter of November 28th, I am aware of the fact that you rent the farm on shares,'' etc.

The only grounds Picknell had for abandoning the lease after operating under it for at least seven months appeared from the evidence of Mrs. Picknell when testifying for plaintiff, and is as follows: ''Q. Mrs. Picknell, reference has been made to the fact that you and Mr. Picknell got mad at Mr. Bean. I wish you would explain that to the jury, is that true? * * * A. It originated by Mr. Bean's not answering our letters or helping buy the hay for the cattle and leaving it all for us to do and not having any writings made or nothing. * * * Q. The

expression that Mr. Bicknell used, that you got mad at Mr. Bean, then is explained by the fact that you did not receive attention from Mr. Bean, is that true? * * * A. We couldn't get any word from him at all, what he was to do about money or hay, we spent about $100 for hay for the cattle and we did it just as soon as we could. Q. Did there come a time when there was no hay at all to feed the cattle? A. Yes, sir, we only had a feed that we had to borrow from one feed to the next for the cattle quite a little. Q. Were you in communication with Mr. Bean by letter about that? A. We had written him that we had got to have money to buy feed for the cattle. Q. Did he furnish any money to buy feed for the cattle? A. No.''

So far as appears, the only important subject-matter in Picknell's letters that did not receive attention from Bean was his demand for financial assistance in furnishing feed for the stock. This it is not claimed Bean was legally bound to furnish under the terms of the lease, hence his failure to do so, or to answer letters asking it, did not justify Picknell in abandoning the lease and pursuing the course he did. Nor could he, in the circumstances, justify his abandonment of the contract by Bean's failure to, have the verbal lease reduced to writing, since by operating the farm for months under the terms of the verbal lease, with full knowledge of the claimed breach, he waived such breach.

It is not claimed that plaintiff can recover in this action, unless Picknell was entitled to treat his contract with defendant as terminated by reason of the latter's breach thereof. This the evidence did not tend to prove; therefore, defendant's motion for a directed verdict was properly granted.

*Judgment affirmed.*