## MERRITT F. RUDD *v.* JAMES H. ROUNDS.

*Declarations of the wife in suit for alienation of her affections. Previous cruel treatment by husband. Conduct of counsel reversible error. Rule of damages.*

1. The action being for the alienation of the affections of the plaintiff's wife whereby she was induced to and did abandon the plaintiff and refuse to live with him, the defendant may show what the wife said when leaving her husband's house, and while on her way to the house where the defendant was stopping some eight miles distant, and to the defendant upon arriving there, when he advised her to return to her husband, for all this is a part of the *res gestae.*

2. He may also show that the wife had become embittered towards the plaintiff before this in consequence of his cruel treatment of her, and had entered a complaint against him for an assault upon her.

3. Also that the wife's mother had written the plaintiff a letter accusing him of ill treating her daughter, that the plaintiff made no reply to this, and after receiving it refused to speak to the mother.

4. The plaintiff was properly permitted to testify that on several occasions he invited his wife to go to the village with him, and that she refused and afterwards went with the defendant.

5. The defendant proposed to ask the plaintiff on cross-examination, "Didn't you tell her, your wife, that you were using oil of cubebs for a trouble you had," referring to the claim of the defendant that the plaintiff had contracted a bad disorder in a house of ill fame. *Held,* rightly excluded as calling for immaterial matter.

6. It is reversible error if counsel, after a letter has been excluded, persists, against the objection and exception of the other side, in offer-

Merritt F. Rudd *v.* James H. Rounds.

ing the separate parts of it in such a way as to get its contents before the jury.

7.　In an action for the alienation of the wife's affections, the value of the wife's services is not the true rule of damages.

Case for the alienation of the affections of the plaintiff's wife. Plea, the general issue. Trial by jury at the December term, 1891, Tyler, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

The evidence of the plaintiff tended to show that he and his wife were married in 1873 and had lived "happily enough" together previous to the time when the defendant came to the plaintiff's house to board, in August, 1889; that from this time on his wife began to treat him with coolness, later ceased to cohabit with him, and finally on the 23d of June, 1890, left his house altogether. The defendant had ceased to board at the plaintiff's house in April, 1890, and in June of that year was living at the house of one Mr. Barney in Shaftsbury, about eight miles distant from the plaintiff's house.

The testimony of the defendent tended to show that the plaintiff was a very intemperate man and at times treated his wife with great cruelty; that on one occasion he visited a house of prostitution in Troy, N. Y.; that he was frequently away late at night, and at times would return intoxicated and beat his wife, for which a complaint and warrant were issued; that she had on two or more occasions left the plaintiff on account of his cruel treatment of her before the defendant became acquainted with her.

On cross-examination of the plaintiff the defendant's counsel asked him if he had not contracted a bad disorder while visiting a house of ill fame, which the plaintiff denied. The plaintiff was then asked the following question: "Didn't you tell her, your wife, that you were using oil of cubebs for a trouble that you had?" which the court excluded under the defendant's exception.

The plaintiff was permitted to testify, subject to the defendant's exception, that he had asked his wife to go to the village with him on different occasions when she refused to go with him, and afterwards went with the defendant.

It appeared that on the 23d day of June, 1890, the plaintiff's wife left her home and went to Mr. Barney's; that she then bore marks of violence about her face and arms, and that the defendant advised her to return home. The defendant offered to show that on that day she expressed to him fears of bodily injury from her husband, representing that the bruises she then bore had been inflicted by him and that she declined to follow his advice. This testimony was excluded under the exception of the defendant.

The defendant introduced one Elijah Rudd, the father of the plaintiff's wife, who testified that on the 23d day of June his daughter came to his house from the plaintiff's house, a distance of about one-half mile; that she was nervous and excited, and that her face, arms, and shoulder were discolored. The defendant offered to show by the said Elijah, that immediately upon arriving at his house, his daughter charged that her husband had inflicted the bruises upon her and that she was in fear of further violence and dare not remain at the plaintiff's house. The defendant further offered to show that a short time before, the plaintiff's wife had entered a complaint to the town grand-juror against the plaintiff for an assault made upon her by him. All this evidence was excluded under the exception of the defendant.

The defendant further offered to prove by the deposition of Jane Rudd, the mother of the plaintiff's wife, that her daughter had previously to June 23d, 1890, repeatedly come to her with bruises and other marks of violence upon her person and complained that they had been inflicted by her husband, and that this was previous to her acquaintance with the defendant; that her daughter had stated to her that she could not endure this

treatment much longer. Further, that the deponent had written to the plaintiff a letter sometime in the year 1888, complaining of this ill treatment to which the plaintiff had made no reply; and that after receiving the letter the plaintiff refused to speak to her.

The plaintiff testified that he had found in a certain bed in his house a letter written by his wife and addressed to the defendant; but there was no evidence tending to show that this letter had ever been seen by the defendant or that he knew any part of its contents. The plaintiff's counsel offered this letter in evidence, but the court, after examining it, excluded it. The plaintiff's counsel afterwards persisted in offering certain parts of the letter in evidence, and in reference to what took place, the exceptions were as follows:

" The plaintiff was permitted to prove that while the defendant was boarding in his house the defendant was known and called 'Jim' as showing who was meant by the two first words of the letter, 'Dear Jim.' After the letter was excluded the plaintiff's counsel, under objection and exception by the defendant, which exception was allowed by the court, holding the letter in his hand in the presence and hearing of the jury said: 'I can see that there are some points of this letter that might not be admissible perhaps; but I now offer that part of the letter which expresses her affection for the person to whom she writes the letter.' "

By the Court:

" It seems to me that the exclusion of this letter would exclude every part of it."

By Mr. Batchelder;

" I offer this to show the wife's feelings for the person to whom this letter is addressed and to show her mental condition; but not to show that the defendant was guilty; but, we offer that part of the letter which shows the wife's feelings and affections. I offer to show that the person to whom it is addressed of that name was the name by which this defendant while boarding and while in the family of this plaintiff was addressed by the wife. It was 'to Jim,' and I offer to show that she used that name and used to call him by that name."

By Mr. Martin:

" The defendant will concede that the letter was addressed to the defendant."

By Mr. Batchelder:

" I want the further concession—this is not the defendant's name—the letter uses another name—and I want to show that the wife was in the habit of calling the defendant the name used in this letter when she was with him and in the house before the family."

By the Court:

" You are probably content with Mr. Martin's concession that the person addressed was the defendant."

By Mr. Batchelder:

" No, I am not content with it at all, only so far as it goes."

By the Court:

" Now you offer to show that this was the name by which she used to call him."

By Mr. Batchelder:

" I had rather prove it by the witnesses as it is evidence anyway."

By Mr. Martin:

"It is conceded that the defendant's name was James Rounds and that Mrs. Rudd was in the habit of calling him Jim."

By Mr. Batchelder:

" Now I offer to prove so much of this letter as shows the state of her affections for the person to whom it was addressed."

Court excludes the evidence.

By Mr. Batchelder:

" Now I offer this letter to show that the defendant is the person to whom her affections were attached at the time it was written."

Court excludes the evidence.

By Mr. Batchelder:

" Now I offer that part of it"—interrupted, exceptions by the defendant to the use Mr. Batchelder is making of this letter

and the stating of the contents before the jury, which exception is granted by the Court.

Mr. Batchelder:

" In the first place I want the date of this letter to appear and I offer to show that the letter is dated June 23, 1890."

By the Court:

" The date of the letter is proper to appear."

By Mr. Batchelder:

" Now I want to offer again and especially just this part of the letter and the words and have them appear on the records of the reporter."

Interrupted. Objections by defendant.

By Mr. Batchelder:

" I want to offer these words of endearment on the second page which I propose to have the reporter take down."

By the Court:

"Mr. Batchelder, we exclude the letter in whole and in each and every part."

By Mr. Batchelder:

" I understand this, and we offer each and every sentence by itself that is excluded."

To each and every offer of the plaintiff's counsel, after the first exclusion of the letter, the defendant's counsel seasonably objected and excepted and also seasonably objected and excepted to the statement by plaintiff's counsel in the presence of the jury of any of the contents or substance of the letter.

The Court charged the jury that if they found the plaintiff was entitled to recover, the measure of damages would be the value of the services of his wife, to which the defendant excepted.

*C. H. Darling*, for the defendant.

The plaintiff should not have been permitted to testify to conversations between himself and his wife. Greenl. Ev. ss. 254, 334 ; Phillips Ev. p. 81; Best Ev. ss. 180, 586; 2 Kent Com. 178 ; Sch. Dom. Rel. s. 53 ; *Ratcliff* v. *Vandervoort et al,*

Merritt F. Rudd *v.* James H. Rounds.

9 N. Y. 153 ; *State* v. *Phelps,* 2 Tyler, 374 ; *Manchester* v. *Manchester,* 24 Vt. 649 ; *Smith* v. *Potter,* 27 Vt. 304 ; *Cram* v. *Cram,* 33 Vt. 15 ; *Sargeant* v. *Seward,* 31 Vt. 509 ; *Carpenter* v. *Moore et ux,* 43 Vt. 391.

The defendant should have been permitted to show the representations and declarations made by the wife on the day she left the plaintiff's house. These were a part of the *res gestae. Phillip* v. *Squire,* Peake Nisi Prius 82 ; *Barnes* v. *Allen,* 1 Keyes, N. Y. 390 ; *State* v. *Howard,* 32 Vt. 380 ; *Nash* v. *Doyle,* 40 Vt. 96 ; *Danforth* v. *Streeter,* 28 Vt. 490 ; *Hadley* v. *Curtis,* 8 N. H. 40 ; *Sissions* v. *Little,* 9 N. H. 271 ; 1 Phillip Ev. p. 82 ; 2 Phillip Ev. p. 212 ; Add. Torts., D. & B.'s Ed., p. 1084–5 ; *Barnes* v. *Allen,* 1 Keyes, N. Y. 390 ; *Hadley* v. *Haywood,* 121 Mass. 236 ; *Dance* v. *McBridge,* 43 Iowa 624 ; *Shattuck* v. *Hammond,* 46 Vt. 466.

He should also have been permitted to show the complaint made by the wife to the grand-juror and the state of feeling between the husband and wife before her acquaintance with the defendant and from time to time afterwards and what occasioned this state of feeling. *Quinn* v. *Quinn,* 16 Vt. 426 ; *Fenno* v. *Weston,* 31 Vt. 345–352.

The conduct of counsel in reference to the letter was reversible error. *Rea* v. *Harrington,* 58 Vt. 181 ; *Hall* v. *Jones et al,* 55 Vt. 297 ; *State* v. *Meader,* 54 Vt. 126 and cases there cited ; *Cartwright* v. *State,* 8 Tex. App. 416 ; *People* v. *Dane,* (Mich.) 26 N. W. Rep. 781.

The value of the wife's services was not the measure of damages. No. 240 Acts of 1884 ; No. 84 Acts of 1888; *Wright et ux* v. *Burroughs,* 61 Vt. 390 and 62 Vt. 264; *Story et ux* v. *Domey et ux,* 62 Vt. 243.

*Sheldon & Cushman,* and *Batchelder & Bates,* for the plaintiff.

The declarations of the wife charging the plaintiff with personal violence at the time she left his house were inadmissible.

Merritt F. Rudd *v.* James H. Rounds.

*Worden* v. *Powers*, 37 Vt. 619 ; *State* v. *Davidson*, 30 Vt. 377 ; *Downer* v. *Strafford*, 47 Vt. 579 ; *State* v. *Carleton*, 48 Vt. 636.

The opinion of the court was delivered by

ROSS, Ch. J.   This is an action brought to recover damages for an alienation of the affections of the plaintiff's wife and thereby causing her to leave him.   The wife's state of mind and regard for the plaintiff at the time she became acquainted with the defendant, and during the time of that acquaintance, until she left the plaintiff, and if there was a change during that period, whether caused by the conduct of the plaintiff, or the wrongful conduct of the defendant, were proper subjects of inquiry and investigation.   The condition of her mind in regard to her husband, and what caused it to change from time to time, could be ascertained by her acts and conduct towards the plaintiff and defendant respectively, and by their acts and conduct towards her, and by her and their expression of their respective mental state towards and for each other, and of the causes therefor.   The nature of the suit and what was involved in its solution, opened a broad field of inquiry and investigation.   The wrongful alienation of her affection by the defendant, resulting in her leaving, and refusing to live with the plaintiff, as his wife, constitutes the gist of the action.   Her leaving and refusal bore upon whether her affections had been alienated from some cause, and if caused by the wrongful conduct of the defendant, upon the amount of damages recoverable.   What she said concurrent with, and while she was leaving the plaintiff's house, and on her way to the house where the defendant was stopping, and when she had reached there, and her refusal at the request of the defendant, to return to her husband, characterizing and giving the reason for her leaving, and refusal to return, were a part of the *res gestae* of the leaving and refusal to return, and admissible in evidence.   *State* v. *Howard*, 32 Vt. 380 ; *Hadley* v. *Carter*, 8 N.

H. 40. The latter case was for enticing away a servant, and quite analogous, in principle. Her leaving was not fully accomplished until she had reached the house where the defendant was stopping, and refused, on his advice, to return to the plaintiff. What she gave as her reason for leaving, to the defendant, to her father and mother, gave character to the act she was then performing, and should have been received in evidence. These declarations were concurrent with and a part of the act, of which the defendant complained. They were made before this suit was, or could have been, in contemplation. As announced by Redfield, J. in *Danforth* v. *Streeter*, 28 Vt. 490 : "The jury were to judge * * * whether the declarations were made *bona fide*, or were a mere ruse to get up evidence upon his own behalf, or for some other intended purpose." We observe nothing in that part of the mother's · deposition excluded which we think was inadmissible. The defendant had the right to show what the wife, when exhibiting wounds and bruises claimed to have been inflicted by the plaintiff, said of their effect upon her feelings towards the plaintiff. The occasions were either shortly before, or during her acquaintance with the defendant. *Gilchrist* v. *Bale*, 8 Watts 355 (34 Am. Dec. 469). That the plaintiff made no reply to the mother's letter accusing him of personal abuse of his wife and of his changed manner thereafter towards the mother, were circumstances bearing upon the truth of the accusation. As mother, she had the right to inquire in regard to the plaintiff's treatment of her daughter. Naturally he would have replied and denied the accusation, if false. The fact that she complained of, and caused the plaintiff to be prosecuted just before she left was admissible to show that the abuse had so far weaned her affection for him that she was willing to subject him to prosecution. There was no error in excluding the inquiry put to the plaintiff on cross-examination. The court are not judges of *materia medica*. As put, the question called for immaterial matter.

Merritt F. Rudd *v.* James H. Rounds.

Whether the plaintiff invited his wife to go to the village with him, and she declined and afterwards went with the defendant, did not involve a matter of marital confidence. Such invitations between husband and wife, usually, are given and declined publicly. They are not usually secret, but ordinary, open communications. They neither require, nor are inspired by marital confidence. We cannot presume they were on this occasion. The fact that the wife was more attentive to the defendant, than to the plaintiff, also that the plaintiff protested to her against the defendant being with her so much, were properly admitted.

We have not been furnished with a copy of the wife's letter addressed, but not sent, to the defendant, which was excluded by the court. We do not consider whether any portion of it was admissible. The question of the admissibility of the letter or any portion of it is not properly before us. The persistent efforts of the plaintiff's counsel to place the contents of the letter before the jury after it had been excluded were very reprehensible. When allowed, as it was, against the objection and exception of the defendant, on the case as made up, it was reversible error, that could only be cured by showing that the letter was legally admissible. But conceding that the court erroneously excluded the letter, such fact furnishes no excuse for the conduct of the plaintiff's counsel. His conduct may have been occasioned by indiscreet zeal, and the spur of the occasion, and have been regretted as soon as it was over. Yet counsel should never permit their zeal, or the excitement of the occasion to carry them beyond the proprieties of practice.

We do not think that the value of the services of his wife, was the true measure of the plaintiff's damages. He was legally entitled to her service and marital consort. But these rights were also burdened with the obligation to clothe, support, cherish and care for her, in sickness, as well as in health. The rule given is too broad and unlimited.

*Judgment reversed and cause remanded.*