EDWARD GREENOUGH, JR. *v.* UNITED STATES LIFE INSURANCE CO.

February Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 2, 1922.

*Findings of Fact—No Error in Failing to Find Immaterial Facts —Principal's Liability to Third Persons for Agent's Torts —Upon What Such Liability Depends—That Agent Alone Benefited Insufficient to Exempt Principal—Effect of Finding as to Plaintiff's Suspicions of Agent.*

1. Findings of fact, by a county court, must stand against exceptions if supported by substantial evidence, as it is not the province of the Supreme Court to weigh the evidence in considering such exceptions.

2. In an action against an insurance company to recover the amount of a cash bond, which the company's agent induced plaintiff to supply, by fraudulently representing that it was a company requirement, and subsequently converted to his own use, the court having found that the agent in taking plaintiff's money had acted without the authority or knowledge of the defendant, it was not error to refuse the further finding that in accepting the cash from the plaintiff the agent was not carrying out either the express or implied directions of the defendant, as this was not the question, but whether he was acting within the scope of his employment, actual or apparent and in furtherance of defendant's business.

3. A principal is civilly liable to third persons for torts committed by his agent, including fraud and deceit, when acting in the actual or apparent scope of his employment, though in so doing the agent exceeds his authority or disobeys the express instructions of his principal.

4. The liability of a principal for his agent's fraud does not depend upon the character of the act or whether it was done during the period of employment, but upon whether it was done to carry out the principal's directions, express or implied, or to effect some purpose of the agent alone.

5.   When the agent of an insurance company, while acting within the scope of his authority and in furtherance of its business, employed a sub-agent and, in conection therewith, fraudulently induced him to supply a cash bond which the agent converted to his own use, the company cannot escape liability for the damages resulting from such fraud because the agent alone was benefited thereby, as it is only when the business transacted, or the act done, is itself to effect a purpose of the agent that the principal is not liable.

6.   In an action against an insurance company, to recover for the acts of its agent in fraudulently requiring from plaintiff, when employing him as a sub-agent, a cash bond, which the agent converted to his own use, a finding that the plaintiff was suspicious of the agent and attempted to protect himself from losing the money paid by taking a receipt therefor, was not a finding that he was suspicious of this agent's authority to require and accept a cash bond and did not bar plaintiff's recovery on the ground that he had failed to exercise reasonable prudence to ascertain the agent's authority; and the fact that he was suspicious of the agent in other respects was immaterial and did not put him on inquiry concerning the agent's authority.

ACTION FOR TORT to recover for fraud of defendant's agent. Plea, the general issue.   Trial by court, Special Term, July, 1921, Chittenden County, *Chase*, J., presiding.   Judgment for plaintiff.   The defendant excepted.   The opinion states the case. *Affirmed.*

*Charles F. Black* for the defendant.

*Warren R. Austin* and *Allen Martin* for the plaintiff.

SLACK, J.   This is an action to recover damages occasioned by the fraud of defendant's servant.   Judgment was rendered for plaintiff on facts found by the court and the case comes here on defendant's exceptions.   The exceptions briefed are to certain of the findings, to the failure of the court to find as requested, and to the judgment.

The defendant is a life insurance company.   It appears from findings not excepted to, that, at the time the acts complained of were committed, one William J. Power was in the

employ of defendant and acting as its agent in this State; that, while defendant never expressly gave Power the title of state manager, he held himself out to the plaintiff and to the public as such, and defendant knew, or ought to have known, that fact; that, by allowing him to do this, defendant gave plaintiff reason to believe, and he did believe, that Power represented defendant in the capacity of managing its business in this State; that Power had authority under his contract with defendant to employ subordinates to solicit insurance and collect premiums, and was required to take a bond from each subordinate who was permitted to collect premiums, conditioned for the faithful performance of such subordinate's duties, which bond was to run to Power and was to be assigned by him to defendant; that on September 14, 1920, plaintiff, in response to a newspaper advertisement, wrote the U. S. L. Co. (which meant defendant), Burlington, Vermont, applying for a position, and in reply received an application blank from Power; that the day following, plaintiff, at the request of Power, called at defendant's office in Burlington where he met Power for the first time; that Power then told plaintiff that he was defendant's state manager for Vermont and gave plaintiff his business card from which it appeared that he was defendant's state manager for Vermont and northern New York; that Power, acting within the scope of his authority from defendant, then and there employed plaintiff as a subordinate to solicit insurance and collect premiums, in accordance with the terms of a written contract entered into between them; that this contract was not on the blank which defendant furnished Power to be used in such cases, but was on a form prepared by Power, and contained a provision for a cash bond, so-called, a provision not in the form furnished Power by defendant; that Power used the form prepared by him without the authority or knowledge of defendant; that during the negotiations which resulted in the contract between Power and plaintiff, Power represented to plaintiff that defendant required a cash bond, for reasons stated by him, and that it would not accept any other bond, all of which Power knew to be false; that relying upon this representation, and because of it believing the defendant in fact required him to make a cash deposit, and in order to obtain employment, the plaintiff procured a draft for one thousand dollars, which was equivalent to cash, and delivered it to Power and took his receipt therefor; that in turning this money over to Power, plaintiff

thought he was complying with the regulation of defendant concerning a bond; that defendant did not receive any part of this money, and did not know Power had taken it from plaintiff until it received a letter from the latter in October, 1920; that it then took steps, immediately, to terminate its contract with Power; that soon after, Power converted the entire amount to his own use.

The following findings were severally excepted to on the ground that they were not supported by the evidence:

1.   "The plaintiff believed, and from the way in which the defendant permitted Power to hold himself out as its representative, had reason to believe, that statements made by Power as to his employment and what he had to do to obtain employment were the same as though made by the defendant.   He also took the receipt believing that his money was being taken in behalf of the defendant in accordance with its requirements."

2.   "The plaintiff would not have intrusted his money to Power if he had not believed that in doing so he was intrusting it to the defendant."

3.   "In employing the plaintiff and taking his money instead of a bond, Power was acting in part to further the business of the defendant by securing a subordinate to solicit insurance and collect premiums for it whose cash deposit could be held to make up any shortage which might result from such subordinate's failure to account for premiums collected, and in part to serve a purpose of his own which was to get the possession and control of the plaintiff's money to enable him to convert it to his own use if he saw fit to do so."

[1]   It is not our province to weigh the evidence, in considering these exceptions.   The findings must stand if supported by substantial evidence.   *Gilbo & Swartz* v. *Merrill's Est.*, 92 Vt. 380, 104 Atl. 10, L. R. A. 1918 F, 387.

We think there is evidence to support the first two findings. As to the third finding, the evidence tends to show that in hiring plaintiff to solicit insurance and collect premiums, Power was acting within the scope of his employment and in furtherance of defendant's business.   Indeed, defendant practically admits this in its brief.   But there is no evidence to support that part of the finding that Power was so acting in taking plaintiff's money instead of the required bond.   That the cash deposited "could be held to make up any shortage which might result from such

subordinate's failure to account for premiums collected" is, of course, true. But that that was "in part" what Power took it for is purely conjectural. He could have secured plaintiff's services as readily by taking the required bond as by exacting a cash deposit.

[2]   The defendant requested the court to find: "That Power, in requiring and accepting cash from the plaintiff was not carrying out either the express or implied directions of the defendant," and excepted to its failure to do so. The court found that in using the contract Power used, and in taking plaintiff's money, Power acted without the authority or knowledge of defendant. This covers all defendant was entitled to under this request. Moreover, it is not a question of whether Power was carrying out the directions of defendant, express or implied, but whether he was acting within the scope of his employment, actual or apparent, and in furtherance of defendant's business.

This brings us to consider whether the findings, excluding from consideration such part of the third finding excepted to as is not supported by evidence, are sufficient to support the judgment.

[3, 4]   The general rule, broadly stated, is that a principal is civilly liable to third persons for torts committed by his agent when acting in the actual or apparent scope of his employment, even though in committing such tort the agent exceeds his authority or disobeys the express instructions of the principal. Story's Agency, §§ 452, 453; 31 Cyc. 1582; 2 C. J. 848, and cases referred to in Story's Agency there collected. This rule applies to acts of fraud and deceit as well as to conversion, assault and battery, and trespass. See cases cited above. While in most cases where the principal has been held liable for the fraud of his agent the principal was benefited by such fraud, it by no means follows that the principal is not liable when the fraud is not committed for his benefit. *Lloyd* v. *Grace, Smith & Co.*, L. R. (1912) App. Cas. 716, cited in *Mick* v. *Royal Exch. Assur.*, 87 N. J. Law 607, 91 Atl. 102, 54 L. R. A. (N. S.) 1074. See also, *Wilmerding et al.* v. *Postal Tel. Cable Co.*, 118 App. Div. 685, 103 N. Y. S. 594, affirmed 192 N. Y. 580, 85 N. E. 1118; *Birkett* v. *Postal Tel. Cable Co*, 107 App. Div. 115, 94 N. Y. S. 918, affirmed 186 N. Y. 591, 79 N. E. 1101; *Bank of California* v. *W. U. Tel. Co.*, 52 Cal. 280; *McCord*

v. *Telegraph Co.*, 39 Minn., 181, 39 N. W. 315, 1 L. R. A. 143, 12 A. S. R. 636; *Bank of Palo Alto* v. *Pacific Postal Tel. Cable Co.* (C. C.) 103 Fed. 841.

The test applied by this Court in *Ploof* v. *Putnam,* 83 Vt. 252, 75 Atl. 277, 26 L. R. A. (N. S.) 251, 138 A. S. R. 1085, is in effect this: The principal is liable for the acts of his agent if committed in the scope of his employment and in furtherance of the principal's business. In other words, the liability of the principal does not depend upon the character of the act itself or whether it was done during the period of employment, but, rather on the question of whether it was done to carry out his directions, express or implied, or to effect some purpose of the agent alone. If the former, the principal is liable; if the latter, he is not liable.

[5] The defendant contends that under this rule it is entitled to a judgment in its favor, because, in committing the fraud complained of, Power was not acting in furtherance of its business, but rather to effect a purpose of his own. This argument proceeds on the ground that the means used to accomplish the act, and not the act itself, is determinative. It fails to distinguish between the fraud, and the business in the transaction of which the fraud was committed, between the means used and the result obtained thereby.

It being virtually admitted by defendant that Power was acting within the scope of his authority, and in furtherance of its business, in employing plaintiff, can it escape liability for the fraudulent means used to effect such employment on the ground that Power alone was benefited by the use of those means? This question must be answered in the negative. When the transaction, in the consummation of which the fraud is perpetrated, is in furtherance of the principal's business, to carry out some direction of his, express or implied, he is answerable for damages resulting from such fraud, although the agent alone is benefited thereby. It is only when the business transacted, or the act done, is itself to effect a purpose of the agent that the principal is not liable. Such is the effect of the rule laid down in the Ploof case. In the case in hand, while the means used to effect plaintiff's employment were fraudulent, and benefited Power alone, the employment of plaintiff was in furtherance of defendant's business and it had the benefit of plaintiff's services to the same extent that it would, had those services been secured in the manner authorized by defendant.

[6]    The defendant contends that plaintiff cannot recover, because, knowing Power to be the agent of defendant and being suspicious of him, plaintiff failed to exercise reasonable prudence to ascertain whether or not Power had authority to require and accept the cash deposit.    This claim is based, solely, on the finding that when plaintiff turned his money over to Power and took his receipt therefor, "He" (plaintiff) "was suspicious of Power, who was a stranger, and attempted to protect himself from any possibility of losing his money by the receipt he took."    This is not a finding that it was Power's authority to require and accept a cash deposit that plaintiff was suspicious of, nor will it be so construed in view of the several findings stated herein as to what plaintiff believed about different phases of the transaction. He could not have believed those things if he suspected Power's authority to require and accept a cash deposit.    That he was suspicious of Power in other respects is immaterial, because that did not put him upon inquiry concerning Power's authority.

It may be admitted that, in the circumstances, the conclusion reached works a hardship to defendant, but a different conclusion would be to cast the loss occasioned by the fraud of defendant's agent on the plaintiff, and it is more reasonable when one of two innocent persons must suffer from the wrongful act of a third person that the principal who has placed the agent in a position of trust and confidence should suffer, than a stranger.

*Judgment affirmed.*