CHARLES W. GUTZWILLER *v.* AMERICAN TOBACCO COMPANY ET AL.

October Term 1923.

Present:  WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed November 16, 1923.

*Consideration of Evidence on Motion for a Directed Verdict— Master and Servant—Relation Not Terminated by Vacation —Effect of Resignation of Servant While on Vacation—Rule of Respondeat Superior Requires Master to See That Instructions Are Obeyed.*

1. In reviewing the overruling of defendant's motion for a directed verdict, the evidence is to be viewed in the light most favorable to plaintiff, and when thus viewed, if it fairly tends to support the verdict, the judgment must stand.

2. A master, who in recognition of faithful service, gives his servant a holiday, cannot be said to thereby terminate his relation of master to such servant.

3. The relation of master and servant was not affected by the latter's resignation, while on vacation with pay, effective at a certain date, in the interim between the sending of notice of resignation and the date when by its terms it became effective.

4. A master is not relieved from liability for his servant's negligence in connection with the master's business, because the servant is then violating the master's instructions, as it is not enough for the master to give instructions, but under the rule of *respondeat superior* he must see that they are obeyed.

5. In an action for personal injuries against a corporation and its servant evidence *held* to show that at the time of accident the servant was using the company's automobile in the furtherance of its business and within the scope of his employment.

ACTION OF TORT for negligence. Plea, the general issue. Trial by jury at the March Term, 1923, Rutland County, *Chase,* J., presiding. Verdict and judgment for the plaintiff. The defendant American Tobacco Company excepted. The opinion states the case. *Affirmed.*

*Stickney, Sargent & Skeels* and *Walter S. Fenton* for the defendant American Tobacco Co.

*Jones & Jones* for the plaintiff.

SLACK, J. [1] This action was brought against Philip J. Wood, John F. Schmich, and the American Tobacco Company to recover damages for personal injuries sustained by the plaintiff, on the evening of December 25, 1922, when, owing to the alleged negligence of Schmich, an automobile owned by the American Tobacco Company and driven by Schmich, collided with a motor cycle owned and driven by the plaintiff. The collision occurred on Wales Street in the city of Rutland. There was a trial by jury resulting in a verdict and judgment against Schmich and the American Tobacco Company, the action having been discontinued as to Wood. At the close of all the evidence, the American Tobacco Company, hereafter referred to as the defendant, moved for a directed verdict, as to it, on the ground that there was no evidence which tended to show that on the occasion in question the automobile was being used by Schmich in its business. The motion was overruled and the defendant saved an

exception.   The only question for review is whether the court erred in disposing of this motion.   If the evidence viewed in the light most favorable to the plaintiff, as it must be (*Morris* v. *Trudo*, 83 Vt. 44, 74 Atl. 387, 25 L. R. A. [N. S.] 33), fairly tends to support the verdict, the judgment must stand; otherwise, it cannot.

The undisputed evidence tended to establish these facts:  At the time of the accident, Schmich had been in the employ of the defendant for about a year and a half, selling tobacco and cigars in certain territory in Vermont, with headquarters at Rutland. Sometime in the spring of 1922, the defendant furnished him with the automobile he was using at the time of the accident to use in its business, and for no other purpose, and gave him written instructions to place it in a reliable garage immediately at the close of business each day and not to take it out until the next business day, and to keep with it, at all times, all tools and accessories that belonged to it.   About the middle of December, 1922, he received further written instructions to place the automobile in storage immediately after the close of business on December 23, and not to take it out again until January 2, following.   This was the Christmas vacation period, during which Schmich was not required, or expected, to do any work for the defendant but was still under pay.   December 23, 1922, fell on a Saturday, and under his regular employment, Schmich was to quit work at 12:30 p. m. on Saturdays.   Instead of quitting work at that time on December 23, Schmich worked until 5:30 or 6:00 o'clock, and then drove the automobile to his home on East Street.   To complete the work required of him under his employment, he still had to make out and mail to the defendant his weekly expense account, a report of that day's work, a report on the automobile, and perhaps some other reports. On arriving home, he found his brother-in-law in such mental condition that he was taken to Brattleboro the next night. Schmich remained with his brother-in-law Saturday night and Sunday, and Sunday night went with him to Brattleboro, returning to Rutland about three o'clock the following morning.   On the afternoon of December 25, Schmich made out the reports above mentioned, doing such of that work as he could at his home, and the rest at the Berwick Hotel.   When he went to the hotel about six o'clock, he took the automobile which had stood in his dooryard since the Saturday night previous.   After com-

pleting and mailing his reports, at the hotel, he started to return to his home, with the automobile, to get certain tools and accessories which belonged with it, but had been kept at his home during the summer, preparatory to placing it in storage in accordance with his instructions, and got as far as Wales Street when the accident occurred. In the report which he made to the defendant on December 25, Schmich stated that the automobile was placed in storage the Saturday before, that is, December 23. At the time he mailed that report, he also mailed notice to the defendant that his term of employment with it would end January 1, 1923. There was no evidence that the defendant knew that the instructions given Schmich concerning the use of the automobile were being disobeyed in any particular; and he testified that whatever he did after December 23 was done as a matter of convenience to himself, and not for the defendant under its directions.

The question then is: Does this evidence fairly and reasonably tend to show that the defendant is liable in this action under the rule established in *Ploof* v. *Putnam,* 83 Vt. 252, 75 Atl. 277, 26 L. R. A. (N. S.) 251, 138 A. S. R. 1085, and followed in *Greenough* v. *United States Life Ins. Co,* 96 Vt. 47, 117 Atl. 332, namely, that in order to hold a master liable for the acts of his servant, it must appear that the act complained of was done to carry out the directions of the master, express or implied, and not to effect some purpose of the servant alone; or, in other words, that the act was done in the furtherance of the master's business and within the scope of the servant's employment.

[2, 3] The defendant claims that the evidence shows that Schmich's services for it terminated at 12:30 o'clock p. m., December 23, and, therefore, that the relation of master and servant did not exist between them at the time of the accident. The claim is untenable. The only ground for it is that that was the time when Schmich had the right to suspend work for the Christmas vacation. A vacation, according to Mr. Webster, is a period of leisure or rest; a holiday. This definition clearly implies a continuation of service, rather than that the service has ended. The master, who in recognition of faithful service, gives his servant a holiday, cannot be said to thereby terminate his relation of master to such servant. Schmich was given a vacation under pay, with the apparent expectation, until he tendered his resignation, that he would resume work at the end

of his vacation.    Manifestly, he did not cease to be a servant of the defendant during that time merely because he was allowed a holiday; a period of leisure or rest.    Nor was the relation between Schmich and the defendant affected by his resignation, for by the very terms thereof, the existing relations were to continue unchanged until January 1, 1923.

[4, 5]    It is urged by the defendant that under its instructions, Schmich's use of the automobile was limited to transporting his stock of goods from place to place for display and sale; but in view of the testimony of Wood, the defendant's division manager, that the automobile was furnished Schmich "to be used for business," and Schmich's testimony that the use of it was not limited as claimed by the defendant, we think it might well be said that he had authority to use it in other matters connected with his employment, such as mailing his reports, since it was obviously as much a part of his business under his employment to make and mail the required reports as it was to display and sell his goods.

It is claimed, too, that at the time of the accident, Schmich was using the automobile in violation of the defendant's instructions, and without its consent or knowledge.    Admitting this to be so, as we must, it does not relieve the defendant from liability, if a case is otherwise made out.    *Greenough* v. *United States Life Ins. Co., supra.*    See also, note, 27 L. R. A. 181.    To so hold would, in a measure, nullify the rule of *respondeat superior.* It is not enough for the master to merely give instructions; he must see that they are obeyed.

The defendant has called attention to a large number of cases in other jurisdictions in which the attempt to hold the master liable for the acts of the servant failed.    In the main, these cases are helpful only as showing in what circumstances the servant has been held to be "on a frolic of his own," rather than carrying out the directions of the master; and contain nothing that inclines us to depart from the rule established by our own cases, cited above.

In the instant case, Schmich's instructions were to place the automobile, together with all things that belonged with it, in storage.    And, notwithstanding the fact that he disobeyed his instructions to do this at a particular time, and because of purely personal reasons, when he did it, or attempted to, it was to carry out the express directions of the company.    His un-

disputed testimony was that at the time of the accident he was on his way home after mailing his reports to get certain things that belonged with the automobile to place with it in storage. Such was the only purpose of that trip so far as appeared. Admitting that, had he obeyed instructions, these things would have been with the automobile, and so the trip to his home unnecessary, nevertheless he was doing what, in the circumstances, was necessary to carry out his instructions to place the automobile with its accessories, in storage; and the fact that he was using the automobile at the time for his own convenience, and not for the company under its directions, as he testified, did not affect the situation, if he was using it in furtherance of the company's business, and to carry out its directions.

It cannot be said, in the circumstances, that there was no evidence fairly tending to show that Schmich was acting at the time in the furtherance of the company's business and within the scope of his employment.

*Judgment affirmed.*