EMMA RONAN *v.* J. G. TURNBULL COMPANY ET AL.

Special Term at St. Johnsbury, April, 1925.

Present: POWERS, TAYLOR, SLACK, and BUTLER, JJ., and GRAHAM, Supr. J.

Opinion filed January 9, 1926.

*Master and Servant—Rule as to Liability of Master for Servant's Acts—View of Evidence on Motion for Verdict—Directed Verdict—No Presumption as to Agency of Driver of Car Who Was Employed Generally by Its Owner—Sufficiency of Evidence to Bind Master for Servant's Negligence—Scope of Employment—Burden of Proof—Prejudicial Error in Asking Improper Questions—Remarks of Counsel of Which Complaining Party . Responsible Cause—Statement of Official's Duties as One of Fact—Automobiles—Guest—Joint Enterprise—Imputed Negligence.*

1. In order to hold master liable for acts of his servant, it must appear that act complained of was done in furtherance of master's business and within scope of servant's employment.

2. On defendant's motion for directed verdict, evidence must be viewed in light most favorable to plaintiff, and case is for jury, if there is any substantial evidence fairly and reasonably tending to support essential facts of plaintiff's claims.

3. In action of tort against a company and employee who was driving its automobile, for personal injuries sustained in an automobile collision, *held* that verdict was properly directed for such company, plaintiff's evidence failing to show any facts or circumstances from which it could be legitimately inferred that employee at time of accident was driving automobile in furtherance of company's business, and within scope of his employment.

4. Proof of ownership of car and that driver was in general employ of owner at time of accident, raises no presumption that driver was agent or servant of owner, or that he was acting within scope of his employment.

5. To prove that driver of automobile is agent or servant of its owner and acting within scope of his employment in so doing, there must be proof of facts and circumstances from which existence of actionable facts may fairly and reasonably be inferred, although fact that driver is thus acting for owner does not require direct evidence, but may be shown by circumstances.

6. In action of tort against a company and employee who was driving its automobile, for personal injuries sustained in an automobile collision, burden was on plaintiff to show facts sufficient to support an inference that driver was at time of accident driving car in furtherance of master's business and within scope of his employment, with no presumption to aid plaintiff therein.

7. In such action, asking and permitting to be answered question to employee as to whether person who assisted him in making report of accident to Secretary of State was insurance agent that insured his employer, defendant company, against accidents by use of automobiles, *held* reversible error, notwithstanding court's instructions to jury to disregard mention of insurance company in arriving at their verdict, where it was apparent that real purpose of inquiry was to get before jury fact that an insurance company was defending suit.

8. In such action, asking driver of automobile with respect to negligent driving at another place shortly after accident, thus attempting to get into case evidence or suggestion that such defendant was driving car negligently on an occasion not in issue, *held* such an offense against orderly procedure and good practice as to constitute in the circumstances reversible error, notwithstanding attempt by trial court to charge it out of case.

9. Irrelevant and characterizing statement of counsel with respect to defendant's attention to truth, although not approved, *held* nothing of which defendant could properly complain, because of his own irresponsive and impertinent answer ·to a proper question which called it forth, since party cannot claim error of which he is responsible cause.

10. In action of tort for personal injuries sustained in automobile collision, where witness for defendant testified that witness was motor vehicle inspector and arrived on scene of accident shortly after it occurred, and made observations and took measurements, question as to his duties as inspector of motor vehicles, and offer to show that it was his duty to investigate such accidents and report to Secretary of State, *held* to call for statements of fact and not conclusions of law, and to be admissible as bearing upon credit to be given his testimony, as tending to show he obtained his information in due performance of official duties, and not while acting as a partisan or through curiosity.

11. In such action, evidence *held* to show as matter of law that plaintiff was a guest in automobile, and that there was no joint enterprise or relationship existing between plaintiff and driver of car in which she was riding so as to make his negligence, if any, imputable to her.

ACTION OF TORT for personal injuries received in automobile collision. Plea, general issue. Trial by jury at the June Term, 1924, Caledonia County, *Chase, J.*, presiding. Verdict directed for defendant company, and verdict found by jury against individual defendant, and judgment on verdicts. The plaintiff excepted to direction of verdict for defendant company and entry of judgment thereon. The defendant Stannard excepted to verdict against him and entry of judgment thereon. The opinion states the case. *Affirmed as to defendant company; reversed and remanded as to defendant Stannard.*

*Searles & Graves* for the plaintiff.

*Porter, Witters & Longmoore* for the defendants.

GRAHAM, Supr. J. This action was brought against J. G. Turnbull Company and Harry J. Stannard to recover damages for personal injuries sustained by the plaintiff, on October 27,

1923, when, on account of the alleged negligence of Stannard, an automobile owned by the Turnbull Company, and driven by Stannard, collided with an automobile driven by Kenneth Daniels, and in which at the time the plaintiff was riding on the rear seat. The accident occurred on the main road from Barton to Orleans, and between one and two miles north of Barton.

At the close of the plaintiff's evidence the defendant J. G. Turnbull Company rested, and moved that a verdict be directed in its favor on the grounds: That there was no evidence tending to show any liability of any character whatever on the part of this defendant; that there was no evidence of negligence on the part of the defendant corporation; that the evidence stood undisputed that defendant Stannard at the time of the accident was not in the employ of the defendant corporation, but was engaged exclusively in his own affairs; and that according to the undisputed evidence he was in no sense the agent of the defendant corporation, and for none of his acts on the occasion of the accident is the defendant corporation liable. This motion was granted and a verdict directed for the defendant Turnbull Company, and the plaintiff was allowed an exception. The case proceeded against defendant Stannard, and resulted in a verdict for the plaintiff. Judgment was rendered on both verdicts, and exceptions saved. The case is here on the exceptions of both parties.

We will first take up the plaintiff's exceptions. The only question here presented for review is whether the court erred in directing a verdict for J. G. Turnbull Company. No claim is made but that there was sufficient evidence from which the jury could find that at the time of the collision the plaintiff was in the exercise of due care, that Stannard was negligent, and that his negligence was the proximate cause of the plaintiff's injuries, and so we are to consider only whether there was sufficient evidence to take the case to the jury tending to show that, at the time of the acts complained of, Stannard was the servant of the Turnbull Company and acting in the furtherance of its business and within the scope of his employment.

[1] The general rule within which the plaintiff must bring her proof, in order to establish liability on the part of this defendant, is stated in *Gutzwiller* v. *American Tobacco Company*, 97 Vt. 281, at page 284, 122 Atl. 586, 588, as follows: "In order to hold a master liable for the acts of his servant, it must appear

that the act complained of was done to carry out the directions of the master, express or implied, and not to effect some purpose of the servant alone; or, in other words, that the act was done in the furtherance of the master's business and within the scope of the servant's employment.'' The same rule is stated and applied in *Ploof* v. *Putnam,* 83 Vt. 252, 75 Atl. 277, 26 L. R. A. (N. S.) 251, 138 A. S. R. 1085; *Greenough* v. *United States Life Insurance Co.,* 96 Vt. 47, 117 Atl. 332.

[2] The evidence must be viewed in the light most favorable to the plaintiff. *Strong & Jarvis* v. *Oldsmobile Company of Vermont,* 96 Vt. 355, 120 Atl. 100; *Capital Garage Co.* v. *Powell,* 96 Vt. 227, 118 Atl. 883. If there was any substantial evidence fairly and reasonably tending to support the essential facts of the plaintiff's claims, the case was for the jury. *Cummings, Admr.* v. *Town of Cambridge,* 93 Vt. 349, 107 Atl. 114; *Partridge* v. *Cole,* 96 Vt. 281, 119 Atl. 398, 32 A. L. R. 854; *Wellman* v. *Wales,* 98 Vt. 437, 129 Atl. 317.

[3] The only evidence adduced at the trial as to the relationship existing between the Turnbull Company and Stannard at the time of the acts complained of is contained in the testimony of Stannard, who was called as a witness by the plaintiff and without objection cross-examined as an adverse party. Stannard's testimony tended to establish these facts: That he was clerk of the defendant corporation, and had been for two or three years; that he was not a stockholder or otherwise financially interested in the company; that he was employed on a weekly salary, and practically all of his time was spent working in the office, having control of the keeping of the books, and, in the absence of Mr. Turnbull, he had charge of the office in minor affairs; his employment also required him to travel about the country, more or less, taking the place of a salesman in the soliciting of orders and making collections; he had solicited business in Barton, and probably had made collections there, and the company had accounts pending in Barton at the time of the accident. Just prior to October 27, 1923, Stannard had been absent from Orleans for two weeks, and on business for the company, but not using any of its automobiles; during the forenoon of October 27, he was engaged with his duties in the company's office, all of the other officers of the company being absent that day. The creamery plant of the company was closed during the afternoon of that day, but the office was kept open by one of the girl em-

ployees.  Stannard left the office a little before noon and took no
papers of the company's with him; soon after dinner he went to
the garage where the Turnbull Company kept a Chevrolet Coupé,
owned by it and regularly used in its business, and being the one
which Stannard used in the company's business more than any
of its other cars; accompanied by his wife he drove the car from
the garage to the cemetery at Orleans, where Mrs. Stannard
planted some bulbs on a burial lot; they then proceeded with the
car toward Barton for the purpose of planting bulbs on the
family lot in the cemetery at Barton village, and had reached a
point between one and two miles north of that village when the
acts complained of occurred.  After some delay caused by the
accident, Stannard and his wife continued their journey to
Barton and to the cemetery and thence back to Orleans the same
day.  On the door of this car driven by Stannard were the
words, "Turnbull's Green Mountain Ice Cream."  While at
Barton, Stannard stopped the car in front of Pierce's Drug Store
and went into that store, but did not recall having conversation
with anybody there.

Stannard also testified, without objection, that the Turnbull
Company had paid for the repairs to the car he was driving, but
that it was "up to him to pay," and also that he had employed
no counsel in the case.

It appeared that the same evening of the accident, Stannard
made a report of it to the Secretary of State, and that, in mak-
ing this report, he was assisted by Mr. Harry Dickens.  One of
the questions in this report was:  "Was your car being operated
for business or pleasure?"  And the answer was, "Business."
The exceptions show that the evidence of Stannard as to his re-
port to the Secretary of State including the report itself was
limited to defendant Stannard, but the plaintiff claims that all
of Stannard's testimony on this point was not so limited.  By
stipulation the transcript is referred to and made controlling on
this question.

When this subject was first introduced, upon objection be-
ing made, the court ruled that it was limited to impeachment
purposes, as affecting the witness Stannard, and confined its
ruling to the pending question.  Later the witness was asked this
question:  "In your report to the Secretary of State you did
state, did you not, that you were engaged at the time the accident
happened in business?" and after objection was made, and the

court had ruled that this particular occasion, this talk was limited to defendant Stannard, the question was withdrawn, but the court then said: "Well, the question is withdrawn, but this particular talk—but the talk upon this occasion with Dickens had by the witness may all be 'limited''; and the examination proceeded as follows: "Q. Mr. Stannard, when you filled out your report to the Secretary of State, the following was one of the questions that you answered, wasn't it, 'Was your car being operated for business or pleasure?' A. Yes sir; Q. And your answer was, 'Business,' wasn't it? A. After consultation —Q. Answer that question: A. Yes; Q. Your answer was, 'Business?'; A. Yes, the answer put on the paper was 'Business.' Q. And you signed this report? A. I did.''

Later in the examination of Stannard the following testimony was given, and without objection being noted: "Q. And, Mr. Stannard, in view of your testimony now, after this suit is brought, that you went down there for the sole purpose of planting bulbs on your family lot in the cemetery, on the night following the accident, in answer to the question 'Was your car being operated for business or pleasure,' your answer was 'Business,' that is true, isn't it? A. Yes.''

Also the following: "Q. Please answer this question 'Yes' or 'No,' Mr. Stannard. It is a fact that you were down to Barton on the afternoon of October 27, 1923, on business, is it not? A. I can't answer that 'Yes' or 'No.' Q. Is there any more difficulty answering that question 'Yes' or 'No' than there was in answering the question in the report made to the Secretary of State? A. Yes. Q. Was your car being operated for business or for pleasure, and your answer was, 'Business?' A. Yes. Q. You stated the matter truthfully, did you not, when you answered the question which has just been read? Answer that 'Yes' or 'No,' if you please. A. I considered I did, yes.''

We think that in view of the last previous ruling, the court and the parties understood that this evidence was all limited to the defendant Stannard, and that, relying thereon, counsel for the defendant Turnbull Company relaxed his vigilance, and we treat it as so limited.

The testimony of Stannard further tended to show that he did not work for the company on Saturday afternoons; that he took the company's car without its knowledge or consent, al-

though he had done so before without reprimand after its officers learned of it; that at the time of the accident he was not on business for the company, but was going to the cemetery in Barton with his wife to help set out some bulbs; that bulbs and tools for that purpose were in the rear end of the car at the time of the accident.  The plaintiff contends that in view of the rule that the testimony must be taken and weighed in the light most favorable  to her contention, only the favorable testimony should be considered, and all unfavorable testimony disregarded.  When this is done there is nothing left to show what purpose or mission Stannard was engaged in at the time of the collision. True, the plaintiff was not bound by the testimony of Stannard, although he was her witness against the Turnbull Company, and she could have shown the facts to be otherwise (*Boville* v. *Dalton Mills*, 86 Vt. 305, 85 Atl. 623; *Wellman* v. *Wales*, 98 Vt. 437, 129 Atl. 317), but she didn't.  She now asks us to infer, not only that Stannard did not tell the truth, but also if he had, that it would have been favorable to her and against the Turnbull Company.  To do so would substitute conjecture for proof. As we recently declared in *Wellman* v. *Wales, supra,* ''Evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise, or suspicion, is an insufficient foundation for a verdict.''  And so, whether considered with or without the unfavorable testimony, the plaintiff's case falls short of proof of any facts or circumstances from which it may be legitimately inferred that Stannard at the time of the accident was driving the car in the furtherance of Turnbull Company's business, and within the scope of his employment.

[4-6]    The plaintiff further contends that where the ownership of a car is once established, that makes out a *prima facie* case that the operator of the car is engaged in the owner's service; that having established the ownership of the car by the Turnbull Company, and its operation by Stannard, an employee of that Company, she made out a *prima facie* case that Stannard was engaged in the company's service.

The rule urged by the plaintiff is, in effect, that proof of the ownership of the car, and that the driver was in the general employ of the owner at the time of the accident, justifies an inference or raises a presumption that the driver was the agent or

servant of the owner, and that he was driving it in the owner's business, and within the scope of his (servant's) employment.

The rule finds support in some of the cases, but other decisions are to the contrary. Among the later cases in which the doctrine is recognized are *Ferris* v. *Sterling*, 214 N. Y. 253, 108 N. E. 406, Ann. Cas. 1916D, 1161; *West* v. *Kern*, 88 Ore. 247, 171 Pac. 413, L. R. A. 1918D, 920; *Geiselman* v. *Schmidt*, 106 Md. 580, 68 Atl. 202; *Howell* v. *Mandelbaum*, 160 Iowa, 119, 140 N. W. 397, Ann. Cas. 1915D, 349.

The following are some of the recent decisions by courts that reject the rule: *Hartnett, Admx.* v. *Gryzmish*, 218 Mass. 258, 105 N. E. 988; *Porcino* v. *De Stefano*, 243 Mass. 398, 137 N. E. 664; *Lane* v. *Ajax Rubber Co.*, 99 Conn. 16, 120 Atl. 724; *Danforth* v. *Fisher*, 75 N. H. 111, 71 Atl. 535; *White Oak Coal Co.* v. *Rivoux*, 88 Ohio St. 18, 102 N. E. 302, 46 L. R. A. (N. S.) 1091, Ann. Cas. 1914C, 1082.

*Lotz* v. *Hanlon*, 217 Pa. 339, 66 Atl. 525, cited by defendant as against the presumption, is in part overruled by the later decisions of the Pennsylvania court, wherein the view is adopted that the presumption exists when the automobile is a business vehicle, such as a truck or a car used for business rather than pleasure. See *Gojkovic et ux.* v. *Wageley*, 278 Pa. 488, 123 Atl. 466; *Goater* v. *Klotz*, 279 Pa. 392, 124 Atl. 83; *Sieber* v. *Russ Bros. Ice Cream Co.*, 276 Pa. 340, 120 Atl. 272; *Thatcher* v. *Pierce*, 281 Pa. 16, 125 Atl. 302.

The courts recognizing the presumption disagree as to its effect. Thus, the New York court holds that the presumption remains only so long as there is no substantial evidence to the contrary; that when such evidence is adduced, the presumption disappears. *Potts* v. *Pardee*, 220 N. Y. 431, 116 N. E. 78, 8 A. L. R. 785; *Fiocco* v. *Carver*, 234 N. Y. 219, 137 N. E. 309. The Maryland court holds that, whether the presumption is rebutted by uncontradicted testimony is a question of law for the court. *Salowitch* v. *Kres*, 147 Md. 23, 127 Atl. 643; *Butt* v. *Smith* (Md.), 129 Atl. 352. The question has frequently been before the Supreme Judicial Court of Massachusetts, which has consistently held against the presumption. That court said in a recent case: "The law of Massachusetts is well settled that proof that the driver of a motor vehicle was in the general employ of the defendant at the moment of an accident, and that the defendant was owner of the vehicle, is not enough to prove

that the driver was then acting within the scope of his employ-ment." *Washburn* v. *R. F. Owens Co.* (Mass.), 147 N. E. 564. To the same effect are the other cases cited above as rejecting the rule.

Whatever the doctrine may be elsewhere, we do not recognize any such presumption as the plaintiff relies upon. The rule with us requires proof of some facts and circumstances from which the existence of the actionable facts may fairly and reasonably be inferred. The question is purely one of evidence. It does not require direct evidence that the driver is acting for the owner of the car, but the fact may be shown by the circumstances. There must, however, be evidence sufficient to support an inference that the driver was at the time of the accident driving the car in the furtherance of the master's business and within the scope of his employment. The plaintiff has the burden of showing this, and there is no presumption to aid him. In principle this is the doctrine of our cases. *Gutzwiller* v. *American Tobacco Co.*, 97 Vt. 281, 122 Atl. 586; *Greenough* v. *United States Life Ins. Co.*, 96 Vt. 47, 117 Atl. 332; *Ploof* v. *Putnam*, 83 Vt. 252, 75 Atl. 277, 26 L. R. A. (N. S.) 251, 138 A. S. R. 1085; *Goupiel* v. *Grand Trunk Ry. Co.*, 96 Vt. 192, 118 Atl. 586, 30 A. L. R. 690.

The granting of the motion for a directed verdict was without error.

[7] We pass to the defendant's exceptions. During the examination of defendant Stannard, when called by the plaintiff, and after the witness had stated that he made a report of the accident to the Secretary of State, and was assisted in making the report by Harry Dickens, he was asked this question: "Q. And Harry Dickens was the insurance agent that insured your company, the Turnbull Company, against accidents by use of their automobiles?" Upon objection being made, the plaintiff's counsel stated to the court that it had a definite bearing upon the question whether the report was made personally or as an official of the Turnbull Company, and whether, at the time of the accident, the witness was engaged in personal or company business. The court permitted the question to be answered, after cautioning the jury that they should not give the fact that an insurance company had been mentioned any force or effect or weight in any verdict arrived at in the case. Exceptions were saved both to the asking of the question and to the ruling of the

19

court allowing it to be answered. The witness answered: "He was." No proper foundation had been laid to make the acts and declarations of Stannard admissible as admissions against the Turnbull Company (*Spinney's Admx.* v. *Hooker & Son,* 92 Vt. 146 at 151, 102 Atl. 53), and it is apparent that the real purpose of the inquiry was to get before the jury the fact that an insurance company was defending the suit. The form of the inquiry was such that the jury might, and probably did, understand that it was the car that was insured, and so Stannard's interests were adversely affected. We think that both the asking of the question and the ruling of the court admitting it constitutes reversible error. *Raymonds, Admx.* v. *Rutland Railway Light & Power Co.,* 90 Vt. 377, 98 Atl. 909; *Cady, Admr.* v. *Lang,* 95 Vt. 287, 115 Atl. 140. The court here tried to keep the jury straight by telling them not to consider the improper suggestion, but in view of its well-known harmful and prejudicial effect on the jury, the attempt necessarily emphasized the suggestion, instead of removing it from their minds. Besides the improper evidence was left in the case for the consideration of the jury, *Rudd* v. *Rounds,* 64 Vt. 432, 25 Atl. 438; *Viles* v. *Barre & Montpelier Traction & Power Co.,* 79 Vt. 311, 65 Atl. 104; *Fraser* v. *Blanchard & Crowley,* 83 Vt. 136, 73 Atl. 995, 75 Atl. 797. These exceptions are sustained.

[8] During the same examination of Stannard, the witness was asked: "Q. And this isn't the first accident that you have been in, is it?" Objection was made and the question was excluded. The next question was this: "Q. Mr. Stannard, as a matter of fact, right after the accident when you drove to Barton you crowded a man by the name of Goodrich right up onto the sidewalk, didn't you, with his car?" The question was excluded, and the defendant allowed an exception to the inquiry. The court promptly instructed the jury to disregard the question and give it no thought or effect whatever. The asking of the question was an attempt to get into the case evidence or the suggestion that the defendant was driving this car negligently on an occasion not in issue, and was improper. *Nones* v. *Northouse,* 46 Vt. 587. Evidence of other accidents than the one in issue had just been excluded, and counsel knew when this question was asked that it called for irrelevant testimony, and would be objected to and excluded, and so framed the question as to get the full force and effect of the evidence with the jury. In view

of its relationship, character, and importance to the main issue, the defendant's case was irreparably prejudiced before the court could intervene, and thereafter any attempt by the trial court to charge it out of the case was futile. The effective control here was for the examining attorney and not for the court, and the nature and character of the offense against orderly procedure and good practice was such as to constitute in the circumstances reversible error—*Rudd* v. *Rounds*, 64 Vt. 432, 25 Atl. 438; *Viles* v. *Barre & Montpelier Traction Co.*, 79 Vt. 311, 65 Atl. 104; *State* v. *Felch*, 92 Vt. 477, 105 Atl. 23; *Niebyski* v. *Welcome*, 93 Vt. 418, 108 Atl. 341.

[9]   Defendant Stannard was a witness in his own behalf, and, while being cross-examined about the cut or mark on the damaged tire of the car he was driving at the time of the accident, he appeared unwilling to identify a photograph of the damaged tire, or to admit that he might have been in error in the description of the cut on the tire as given in his direct testimony. And, being pressed for a responsive answer, stated, "Just back up a minute." He then testified that he had taught school for twenty-five years, and counsel remarked, "Perhaps you did not give special attention to truth?" The defendant was allowed an exception to this remark. While we do not approve of the irrelevant and characterizing statement of counsel, the defendant is in no position to complain in view of his irresponsive and impertinent answer to a proper question which called it forth. A party will not be heard to claim prejudice from error of which he is the responsible cause.

[10]   Frank Parlin was a witness for the defendant, and testified that he was a motor vehicle inspector, and that he arrived at the scene of the accident shortly after it occurred, made observations, and took measurements. He was asked what his duties were as inspector of motor vehicles, and upon objection that his duties were fixed by law, the question was excluded. The defendant then offered to show that it was his duty to investigate such accidents and report to the Secretary of State. The offer was excluded and exception saved.

The question and offer called for statements of fact and not conclusions of law, and were admissible as bearing upon the credit to be given the testimony of the witness, that is, as tending to show that he obtained his information in the due performance of official duties, and not while acting as a partisan or

through curiosity. But as the case is to be reversed on other grounds, it is unnecessary to consider whether the defendant was prejudiced by the exclusion.

The court charged the jury that—

"The plaintiff was by a preponderance of the evidence in this case a guest only in the Ford car. As such she was charged with the duty of conducting herself as a reasonable and prudent man under like circumstances would act, just as a reasonable and prudent man would act, in like circumstances. Now if she did what a reasonable and prudent man, riding on the back seat of that Ford car that day, would in like circumstances have done, that is all the law requires of her."

Further on the same subject the court charged the jury as follows:

"It is only when you find that the plaintiff was injured because of the negligence of the defendant, which negligence constituted the proximate cause of the injury and find that the plaintiff was not guilty of contributory negligence, that the defendant can be found liable in this case. I feel sure that is plain to you all now, but to make assurance doubly sure, let me say that the negligence, if any of the driver of the Ford car, would have this effect in this case, first, as we have said that the negligence of the defendant, in order for the plaintiff to recover, must have been the proximate cause of her injuries, it follows that if you find that the defendant was not guilty of negligence which was the proximate cause of her injuries, but find that the driver of the Ford car was guilty of negligence which was the proximate cause of the plaintiff's injuries, then the defendant in the case would not be liable. You will simply decide whether the defendant is guilty of negligence which constituted the proximate cause of the plaintiff's injuries. If you find that he was and that the plaintiff was guilty of no contributory negligence herself, then the defendant is liable in this case, no matter whether someone else other than the plaintiff was negligent too, which contributed to the happening of the accident."

The defendant excepted to this portion of the charge, and made the claim that the plaintiff was more than a guest, and participated in the control of the automobile, and that the rule of imputed negligence applies.

[11]   The defendant makes no claim but what the charge

of the court was correct if the plaintiff was a guest only in the Ford car. Nor can he well do so, in view of the recent holdings of this Court in *Wentworth* v. *Waterbury,* 90 Vt. 60, 96 Atl. 334; *Howe* v. *Central Vermont Railway Co.,* 91 Vt. 485, 101 Atl. 45; *Lee* v. *Donnelly,* 95 Vt. 121, 113 Atl. 542; *Lefebvre's Admr.* v. *Central Vermont Ry. Co.,* 97 Vt. 342, 123 Atl. 211, so the only question presented by this exception is whether the plaintiff was, as a matter of law, a guest only in the Ford car, or whether there was an issue of fact to be submitted to the jury to determine whether she was a guest or engaged at the time of the accident in a joint enterprise or common purpose with the driver, so as to make his negligence, if any, imputable to her. The uncontradicted evidence showed these facts: Kenneth Daniels and Everett Daniels were brothers living in St. Johnsbury, and on the day of the accident they borrowed their father's Ford car to go to Newport, Vermont, to witness a football game. Kenneth invited Miss Muriel Dow to go as his guest, and Everett invited Miss Ronan, the plaintiff, to go as his guest. At the time of the accident Kenneth Daniels was driving the car, and Miss Dow sat beside him on the front seat. Everett Daniels and the plaintiff were riding in the rear seat. The boys were in control of the car, and determined its course and rate of speed, except that before leaving St. Johnsbury, at the request of Miss Dow, the car was driven to Sherburne's Restaurant to get a coat, and after leaving Barton and a short distance southerly of the place of the accident, and while passing a golf course, the plaintiff asked the boys to slow down so that she could see the course, and this was done. After the car had been slowed down at the golf course, by conference among the four people, it was decided that they would be late for the game, and it was no longer any use to hurry; further than this the girls had nothing to say about where they should go, or in what direction, or at what rate of speed they should travel at any time on the trip, and the evidence does not permit an inference that the plaintiff was to share in the expense of the trip.

The request made by the plaintiff to slow down at the golf course for the purpose stated, and her taking part in the conference as to the necessity of any longer hurrying to get to Newport, was entirely consistent with her status as a guest, and had no tendency to show any activity or attempt to control the management of the car in which she was riding, nor any right or

attempt to command the driver in any way.    Manifestly, on this
state of the evidence·there was no joint enterprise or relationship
existing between the plaintiff and the driver of the car in which
she was riding, so as to make his negligence, if any, imputable
or chargeable to her.    *Lee* v. *Donnelly, supra; Lefebvre's Admr.*
v. *Central Vermont Railway Co., supra.*    And the charge of
the court was correct.

*Judgment for defendant J. G. Turnbull Company is
affirmed; judgment against defendant Harry J. Stannard is re-
versed, and cause remanded.*