## ELIZABETH SCOTT *versus* LUKE PERKINS.

It is not necessary, that the caption of a deposition should specify the kind of action in reference to which it was taken.

Where the testator, by will provided, that " my will is, that all my property, real and personal, in the town of M. and the income of the same be given to my wife, E. S. to be used and disposed of by her for her convenience and comfort during her life," and that as to what " may remain after the decease of my wife, E. S. distribution be equally made to them (his children) who survive," and the legal representatives of such as have deceased ; it was holden by the Court, that E. S. had the power to sell and dispose of such personal estate.

In an action of trover for the conversion of sheep, an instruction to the jury by the presiding Judge of the District Court, " that if they were satisfied that the defendant was aware of the wrong of S. and undertook to aid him to secrete the sheep, and keep them from the true owner; or if they were satisfied, that the defendant had been indemnified before the suit was commenced for withholding the sheep from the true owner, and preventing her from enjoying her property ; or that he confederated with P. & S. for that purpose, and that he did withhold the sheep," is not erroneous.

EXCEPTIONS from the Western District Court, GOODENOW J. presiding.

Trover for ten sheep. The general issue was pleaded and joined. Much testimony appeared in the exceptions respecting the property in the sheep and the conversion thereof by the defendant.

The questions of law arising in the case will be sufficiently understood from the requests for instruction, the instructions given, and the opinion of this Court.

The plaintiff contended that the will gave an absolute title to the widow to all the personal estate of said Jonathan Scott, that was located in the town of Minot, unless said estate should be necessary for the payment of debts, expenses of administration, &c., that if the will did not give an absolute title, it gave a life estate with power in the widow to dispose of the same or any part thereof, that might be necessary for her comfort and convenience ; the defendant contended that the will gave the widow no more than a life estate. The plaintiff contended that if the will gave no more than a life estate in

the sheep, still there was no remainder in them at the death of the widow, because the facts show that the widow outlived all the sheep ; but the court instructed the jury, that the will gave to the widow, power to sell them absolutely, if it became necessary for her to do it for her comfort and convenience, but that if it was not necessary for her to do so, to make herself comfortable and supply her necessities, she would have no right to dispose of them or give them away without such necessity, and the whole evidence was before the jury, and they could decide whether there was or was not, a valuable consideration for said bill of sale.

The plaintiff contended, that the evidence showed that Elizabeth had been in possession of all the sheep on the farm for nearly four years, and dealing in them and selling them, and purchasing, after the purchase from her mother, and that possession was *prima facie* evidence of property, and could not be controlled except by proof that some one of the sheep sold to Perkins, was the same sheep that Elizabeth purchased of her mother ; which the evidence did not show, and which was highly improbable. And the defendant contended that the plaintiff must not only prove ownership, but a right to immediate possession at the time of the demand, and that as Benjamin, the administrator, had delivered them to the defendant, and as the administrator had inventoried the sheep, as a part of the estate of Jonathan Scott, he was *prima facie* the owner, and rightfully in possession, and that Elizabeth Scott had no right of possession when the demand was made. But the Court declined to give either of these instructions, but instructed the jury, that if Elizabeth Scott had satisfied them by the evidence in the case, that it was necessary for the widow to dispose of the sheep and other articles in the bill of sale named, for her comfort and convenience, and if they should be satisfied that the plaintiff had paid a full, *bona fide*, and meritorious consideration therefor, towards the comfortable support of the widow, they should render their verdict for the plaintiff if they were also satisfied that the defendant had converted the sheep to his own use ; but otherwise they should give it for the defendant.

Upon the point of conversion, the plaintiff contended that if the jury should be satisfied that the defendant purchased the sheep; or that he claimed the full ownership of them in exclusion of the plaintiff, or if he sold them to Benjamin Scott, or if he delivered them to Benjamin Scott, knowing him to be irresponsible after the plaintiff had forbidden him to do so, either of those facts would furnish sufficient evidence for a conversion, or if he should peremptorily refuse to give them up on demand, or if he should refuse in a qualified manner and then should not deliver them up in a reasonable · time, and that if the demand was as early as the tenth of May, the date of the letter produced, or even if the demand was as early as the 12th or 14th, or even the 16th of May, the defendant made himself liable for his conversion by his delay, inasmuch as there is no proof that he made any question of the plaintiff's title, or that he ever delivered the sheep to the plaintiff, although the parties all lived in the vicinity.

The defendant contended as matter of law, that the evidence did not show any conversion to the defendant's use, as the sheep were delivered to him by Benjamin Scott, the administrator, a person entitled to them against the plaintiff, and that a refusal to deliver them to the plaintiff, if the defendant had no reason to know or believe that the plaintiff was the owner, was no evidence of conversion. But the Court declined to give the instructions as desired by the plaintiff on this point, but did instruct the jury that ordinarily, evidence of demand of property and refusal to deliver the same to the true owner was sufficient evidence of a conversion, but not in all cases, and if the person in possession *express doubt* whether the claimant is the true owner, and ask for delay to satisfy himself, such request is reasonable and will not furnish conclusive evidence of a conversion; that a purchase of property of itself is not conclusive evidence of a conversion, for a man may innocently and honestly purchase property of a thief, and in such case, if the purchaser, on demand being made of the property, desire time to satisfy himself whether the claimant is the true owner, such request is reasonable, and a refusal to de-

liver immediately in such case, accompanied by such request, would not be sufficient evidence of a conversion; that in this case, the demand made by Mr. Woodman, in the letter produced, was not sufficient ; but the demand made by the plaintiff personally, if the jury believed Mr. Noyes, was sufficiently specific ; that if the jury believed that the sheep got among those of the defendant by accident, and that he merely suffered them to remain, because they were mixed, and to accommodate Mr. Scott, because it was inconvenient parting them, the defendant was not obliged to go and hunt them up; that on the other hand, if the action had been against Benjamin Scott, there would be sufficient evidence of a conversion, and if the jury are satisfied, that the defendant was aware of the wrong of Scott, and undertook to aid him to secrete the sheep and keep them from the true owner, or if they were satisfied that the defendant had been indemnified before the suit was commenced, for withholding the sheep from the true owner, and preventing her from enjoying her property, or that he confederated with Samuel Pool and Benjamin Scott for that purpose, and that he did withhold the sheep, then they should find the fact of conversion against the defendant. And if they were satisfied upon these principles as to both points, that the sheep were the property of the plaintiff, and that the defendant converted them to his own use, they should find a verdict for the plaintiff, but if they were not satisfied on both these points, they should render their verdict for the defendant.

The verdict was for the plaintiff, and the defendant filed exceptions.

A copy follows of the part of the will of Jonathan Scott, referred to in the requests for instruction, and in the rulings and instructions of the District Judge : —

" Respecting my wordly estate, I will and bequeath as follows : —

" *Imprimis.* After all my just debts and the necessary charges of my funeral, according to the direction of my friends and family, are paid by my executrix to be hereinafter named, my will is, that all my property, real and personal, in the town

of Minot, and the income of the same, be given to my affec-
tionate wife, Elizabeth Scott, to be used and disposed of by her
for her convenience and comfort, during her life.

"*Item.* Respecting the ten children of mine, which lived
to adult years, my wish is to make them all equal in the shares
to be possessed by each of my estate, and that the real estate
belonging to me in Yarmouth, Province of Nova Scotia, both
upland and salt marsh, be valued with my estate in Minot, that
may remain after the decease of my wife Elizabeth, and distri-
bution be equally made to them who survive, and the children
lawfully begotten or born by those deceased, making suitable
allowance for what the six eldest may have already received,
either in having their time given them before they were free, or
in goods and estate already advanced to them.

"*Item.* It is my will that my daughters, Elizabeth and Mary,
so long as they remain unmarried, should have a home in my
dwellinghouse in Minot, to use and enjoy the same for their
own convenience, whenever and so long as they choose."

The arguments were in writing.

*Fessenden, Deblois & Fessenden,* for the defendant.

1. The Court ought not to have admitted the deposition of
Stephen Curtis, being objected to, as the caption of the de-
position did not state the cause in which the deposition was
to be used. Sec. 17, chap. 133, Rev. Stat. It is there pro-
vided the caption shall state the cause and the names of the
parties, thereto.

The meaning of cause, is that it shall state the species or
kind of action, so that it shall appear, whether the case is
assumpsit, or tort, or in equity, or a real action.

The requisitions of the law must be complied with strictly or
they cannot be used in evidence. *Bradstreet* v. *Baldwin,*
11 Mass. R. 229; *Winoskie Turnpike Co.* 8 Vermont R.
404.

Neither is it of any importance, that the deposition was
used at a former trial. That would not preclude us from ob-
jecting when we discovered the error.

2. There was no conversion. The will of Jonathan Scott

gave his widow only a life estate in the sheep and other personal property, to use and enjoy during her life, and at her death said personal property was to be divided equally among his ten children. The conveyance therefore by the widow, during her life, to her daughter, passed nothing to said daughter; certainly nothing beyond the life of the widow.

By this will Elizabeth, the wife, was to use and dispose of the income of said personal property, but the personal property was to remain to be divided as after provided, at her death.

*First.* This is the only fair import of the language used by the testator. The income is specially provided for, showing that the property was to remain entire and an income derived from it.

Again, the testator provides for the destribution of this property by division after the death of the widow. *Field* v. *Hitchcock*, 17 Pick. 182; *Learned* v. *Bridge*, 17 Pick. 339; *Homer* v. *Shelton, Ex'or*, 2 Metc. 194; *Smith* v. *Bell*, 6 Peters, 68; *Bradley* v. *Wescott*, 13 Ves. 445.

3. The evidence of the plaintiff does not show any conversion. The testimony of Noyes and Benjamin Scott, relied on for that purpose, does not show it.

4. If the widow of the testator could convey an absolute property in the sheep to other persons she could not to the daughter, because the daughter, Elizabeth, was bound to render her services gratuitously, if she accepted the provision made for her under the will.

The will says, " It is my will that my daughters, Elizabeth and Mary, so long as they remain unmarried, should have a home in my dwellinghouse in Minot, and enjoy the same for their own convenience, whenever, and so long as they choose."

The intention of the testator, undoubtedly was, and the Court will decide it right and proper, that if Elizabeth lived with her mother, she should render what services she rendered gratuitously.

This was the understanding of Elizabeth Scott. She, at the time the property was appraised, after the death of Elizabeth

Scott, the mother, gave up a part of the flock and consented to their appraisal.

5. Supposing the sheep to be the plaintiffs' the evidence does not show a proper demand, nor a conversion.

First. The letter B, delivered by Elizabeth Scott, was a request, for the defendant to deliver the sheep to Benjamin Scott.

Second. The demand of Elizabeth Scott, as testified to by Peter Noyes, was not accompanied by any claim of ownership in the sheep, and the defendant therefore was under no obligation to give them up to a person who merely demanded them, without asserting such a claim of ownership.

Third. Besides, he told them to look the sheep up if they wanted them, and did not forbid or prevent the taking of them. The ruling of the Court, therefore, that, if the jury believed Peter Noyes, the demand was sufficiently specific, was erroneous.

6. The ruling of the Court is wrong again in this, that he instructed the jury, "that if they were satisfied, that the defendant was aware of the wrong of Scott, and undertook to aid him to secrete the sheep, and keep them from the owner, they should find the conversion against the owner."

The objection to this ruling is, that there is no evidence to justify the Court in stating this, because there is no evidence showing that he either knew of any wrong of Scott, or aided in secreting the sheep. And that the mere aiding in secreting the sheep, and keeping them from the true owner, would not be a conversion without a demand and refusal, which the Court did not add to this instruction.

7. The instruction of the Court, "if the defendant confederated with Samuel Pool and Benjamin Scott, for the purpose of withholding the sheep from the plaintiff, was a conversion," is erroneous; because the Court did not instruct the jury at the same time, that there must be also a demand and refusal. Besides — without which such acts and doings would not sustain an action of trover, especially if the defendant had no knowledge of the plaintiff's ownership.

7. The instruction of the Court to the jury, that if they were satisfied that the defendant had been indemnified, before

the suit was commenced, for withholding the sheep from the true owner, and preventing her from enjoying her property, they should find the fact of conversion against the defendant, was erroneous in this, that the being indemnified before the suit was commenced, could have no influence upon rendering the withholding a conversion ; but would have had, perhaps, if the defendant had been indemnified, at the time of withholding the sheep, if there had been evidence of it, and the jury believed it, and also the withholding the sheep for that reason. But the substance of the above ruling is, that the mere withholding the sheep from the owner, was a conversion, without a demand for them. The Court should have charged, if the jury believed the defendant was indemnified at the time he withheld the sheep from the true owner, and withheld it on that ground and for that reason, it would be a conversion, if a demand had been made for the sheep.

*J. C. Woodman,* for the plaintiff.

1. Were the depositions admissible ?

They are objected to on the strength of Rev. Stat. c. 133, § 17, because it is not stated in the caption that they were to be used in an action of the case.

The cause is stated. There was but one action on the docket between these parties in this Court, or in any court so far as appears. The names of the parties are stated, the court and the term, all correctly, and that the defendant was notified and did attend.

If there had been two actions between the same parties, one in a plea of the case and the other replevin in the same court, in order that the cause be distinctly certified and made known in the caption, it might have been necessary to say, it was in a plea of the case. But the cause is stated sufficiently, by stating the names of the parties and the court and term of the court.

It is stated that the defendant was legally notified. It must have been for this case as there was no other. He would not have attended, if it had not been a legal notice for this case.

Having had legal notice and attended and cross-examined the witnesses, he has forfeited all right to object to the testimony for a formal objection. The end of the statute has been answered. *Berry* v. *Stinson*, 23 Maine R. 140.

A party who is present at the taking of a deposition cannot object to the want of notice. *Talbot* v. *Bradford*, 2 Bibb, 316.

A deposition is admissible in evidence, although the record does not find that notice was given to the adverse party, if such party cross-examined the witness. *Rogers* v. *Wilson*, Minor's Rep. 407 ; Bray. 77 ; 7 Wheat. 453 ; 3 Bibb. 230.

The foregoing authorities show, that the caption is sufficiently certain, and if not, that it is made sufficiently certain, by the other facts in the case. They further show, that any insufficiency has been waived by the cross-examination, and the former use of the deposition, and so that the objection could not be made at the time it was, but came too late.

2. The defendant contends the sheep are his, and that the ruling of the Judge was erroneous as to the property.

The rule is, that where the use of things is given, which are necessarily consumed by the use, the gift is absolute, unless a portion of the property should happen to remain, and be in a condition to be distinguishable at the death of the first taker. *Merrill* v. *Emery*, 10 Pick. 512 ; *Dorr* v. *Wainwright*, 13 Pick. 330.

This is applicable to the sheep. They perish with the using in a few years. All of them would probably have died, and probably did die or were killed in 5 or 6 years, and certainly in 10 or 12 years, if they were all lambs at the death of the testator.

3. Can the verdict be sustained on the ruling of the Judge. He ruled that the widow by the terms of the will had a right to dispose of the property, if it was necessary for her comfort and convenience. And ruled that the will did not give an absolute right to the property.

It is not necessary for me to maintain the position, that the

will gave the property absolutely to the widow, though it strongly impresses me, that is the meaning of the will.

In the construction of the will, it is necessary to give effect to all the words.

Not only " the income" is given, but " all the testator's property, real and personal, in the town of Minot." It is not given for life merely, " but to be used and disposed of." It is not given, to be disposed of in case of necessity for her support, but " to be disposed of for her comfort and convenience during her life ;" that is, to be disposed of for her comfort and convenience while she lives. The words during her life, as I read the will, is not immediately connected with " disposed of," but with " her comfort and convenience." Comfort means " ease from care." The whole means that she should relieve herself from care, and find her comfort while she lived. The power of disposition is not limited to a life estate, for on that supposition, all the words except income are unnecessary. She was not confined at all in the power of disposition like many cases in the books, but had the whole power of disposal of the income and the estate too.

And the phrase below, " and that the real estate belonging to me in Yarmouth, Province Nova Scotia, both upland and salt marsh, be valued with my estate in Minot, that may remain after the decease of my wife, Elizabeth Scott," implies that the widow had full power to dispose of the property and carried with it an absolute estate in fee. This clause in the will only serves to explain the former clause, giving full power to the widow. For this clause is void, so far as it may be considered as creating any devise or legacy. If there was any property on which it could operate, it purports to give as the law would give it, and is therefore void. *Parsons & ux* v. *Winslow*, 6 Mass. R. 169 ; *Ramsdell* v. *Ramsdell*, 21 Maine R. 296 ; *Pickering* v. *Langdon*, 22 Maine R. 426 ; *Burbank* v. *Whitney*, 24 Pick. 154 ; Cruise's Digest, 4 vol. Title 38, chap. 13, § 5, 6, 7 ; 2 Story's Com. on Eq. § 1070 ; *Harris* v. *Knapp*, 21 Pick. 416.

4. Was the charge unfair upon the defendant in relation to

conversion ? It appears to me that he went the whole figure for the defendant.

The purchase of a horse is itself a wrong, and no previous demand is necessary, to maintain replevin against the purchaser. *Galvin* v. *Bacon*, 2 Fairf. 30 ; *Parsons* v. *Webb*, 8 Greenl. 38 ; *McCombie* v. *Davis*, 6 East, 540.

The sale of the property was held a conversion. *White* v. *Phelps*, 12 N. H. Rep. 385.

Where one who had purchased goods of a person who had no right to sell, upon a demand by the owner, said he should not deliver them up at present, having bought them of the vendor, supposing them to be his, and afterwards held the goods for the space of seven days without offering to return them, held that this was sufficient evidence of a conversion. *Sargeant & al.* v. *Gile & al.* 12 N. H. Rep. 331.

The defendant, if he could have required any time, could only have required a reasonable time, and that time he had, but never has offered to return the sheep.

5. As to the conversion. The jury have found the conversion. The only question is, whether the ruling was correct, or whether the case shows sufficient evidence to sustain the verdict on other grounds.

First. The defendant contends the demand, as testified to by Mr. Noyes, was not accompanied by any claim of ownership. But this point is not raised in the case. The defendant did not request the Court to instruct that the plaintiff should have stated her ownership.

Second. It is said that the defendant told the plaintiff, to look them up, &c. this is mere evidence, and was all before the jury.

Third. That the ruling of the Court was wrong, that if they believed Peter Noyes, the demand was sufficiently specific. The demand was sufficiently specific. The ruling was altogether too cautious, and against the plaintiff.

Fourth. The next objection to the ruling, is, that if the jury were satisfied that the defendant was aware of the wrong of Scott, and undertook to aid him to secrete the sheep and keep them from the true owner, and that he did withhold the sheep,

then they should find the fact of conversion. Can there be any doubt of that? Benjamin Scott went in the night and took the sheep. If the defendant undertook to aid him to secrete them and did withhold the sheep, he became a participator in the wrong. All are principals in trespass.

Fifth. The defendant objects to the instruction, which the Judge gave, that if the jury were satisfied, that the defendant had been indemnified, before the suit was commenced, for withholding the sheep from the true owner and preventing her from enjoying her property, or if they were satisfied, that he confederated with Samuel Pool and Benjamin Scott for that purpose, and that he did withhold the sheep, then they should find the conversion. This is objected to, because the Court did not instruct the jury at the same time, that there must be a demand and refusal besides.

Can there be a doubt, that if the defendant and two others, or one other, entered into a confederacy to wrong the defendant out of the sheep, and that he withheld them, it would be a conversion?

The word withheld, implies a demand. The instruction, therefore, means, if the defendant refused to give up the sheep on demand.

The opinion of the Court was drawn up by

WHITMAN C. J. — The first ground of exception is to the admission of the deposition of Stephen Curtiss. It is insisted that it is not in conformity to the statute, c. 133, § 17, inasmuch as the caption does not specify the kind of action in reference to which it was taken. The statute provides, that it shall state " the cause in which the deposition is to be used." It is argued that the word " cause" means " kind," and, therefore, the kind of action should be named. If such was the intention of the Legislature it is not easy to perceive why it should not have expressed itself in more appropriate terms for the purpose. The word " cause" is applicable to every species of action. It is a general term. The intention doubtless was, that the adverse party should be apprised of the particular

action in which a deposition might be intended to be used. This would be as effectually done by naming the parties and the court where the action was pending, if no other action was there pending between the same parties, as if the kind of action were named. If two actions were pending in the same court, between the same parties, something more might be necessary to designate the one in which the deposition was intended to be used; and if the two actions so pending were of the same kind, something more still might be requisite to point out to the adverse party the " cause" in which it might be intended to be used. In this case it is not pretended that the plaintiff had any other cause pending against the defendant; and the naming of the parties, and the court in which it was pending, clearly enough indicated to the defendant the " cause" in which it was to be used.

The next ground of exception is in reference to the proof of property in the plaintiff. There can be no doubt, if Elizabeth Scott, the mother of the plaintiff, owned the sheep in question, or was invested with power by the last will of her deceased husband, Jonathan Scott, to make sale of them, that, by her bill of sale to the plaintiff, she became the owner of them.

Jonathan Scott bequeathed all his property, real and personal, in the town of Minot, and the income of the same, to his widow, to be used and disposed of by her, for her convenience and comfort, during life. The words " use and dispose of" are supposed, in the argument for the defendant, to refer to the income only, and not to the estate, either real or personal. But it is difficult to perceive, if such were the case, why the words " during her life" should not immediately have succeeded the word ' Minot.' That would have given her all that, upon the supposed construction, she could have had. Again, — it cannot be doubted, that the testator intended she should have, not only the income of the estate in Minot, but also the actual occupation, and of course the use, of it. It could not have been expected by him, that the identical sheep left by him could exist many years. The income of them

would consist of the increase, in a great measure, while the original stock, according to the course in such cases, would be perishing. After the lapse of over twenty years, which transpired after the death of the testator, and before the bill of sale to the plaintiff, none of the original stock could have remained. Again, — the words "estate" and "income" are coupled together; and the words "to be used and disposed of," following in close connection, in grammatical construction refer as much to estate as to income. Again, — the estate in Minot, that may remain after the decease of his widow, he willed should be distributed. If he had not contemplated that she should dispose of it, as occasion might require, would he have so expressed his intention? On the whole we cannot consider the construction contended for as well founded. If the widow received any sheep under the will, which does not seem to be clearly proved; and if the increase of them would not actually belong to her as part of the income, we cannot doubt that it must have been the intention of the testator to allow her to dispose of them whenever her comfort and convenience might require that she should do so.

There is, as was argued at the bar, much similitude between this case and that of *Harris* v. *Knap*, 21 Pick. 416. In that case the bequest was to the daughter "for her use and disposal during her life;" and what should remain to others. The Court held that she had power to dispose of the estate; and thereby to lessen the residuum. The language of the testator in the case here was at least as cogent, giving the power of disposal, as in that. Here the bequest was of the estate and income to be disposed of for her comfort and convenience during life; and the jury, under the instruction received from the Court, have found that it was necessary for her comfort and convenience that she should sell the sheep, as she did, to the plaintiff. And thus under any aspect of the case, whether the sheep were the widow's as being the increase of, and therefore, the income of sheep derived from the estate, of the testator; or were her own, independent of any connection with any such bequest; or to be considered as part of the

estate bequeathed, the sale by her to the plaintiff makes the proof of property in her complete.

The next question is, was there a conversion by the defendant? As to this the Judge directed the jury, if they believed the testimony of the witness, Noyes, the demand of the sheep, before action brought, was sufficiently specific; and we concur in that opinion. The defendant could not have misunderstood the object of the plaintiff; and his conversation with her shows he did not misunderstand it. The Judge instructed the jury further, that, if they "were satisfied that the defendant was aware of the wrong of Scott (the witness,) and undertook to aid him to secrete the sheep, and keep them from the true owner; or if they were satisfied, that the defendant had been indemnified before the suit was commenced for withholding the sheep from the true owner, and preventing her from enjoying her property; or that he confederated with Samuel Pool and Benjamin Scott for that purpose, and that he did withhold the sheep, then they should find the fact of conversion by the defendant." Here were three hypotheses. If establishing either of them would not amount to a conversion, the exceptions must prevail; for the jury may have found the insufficient one to be true. But we think each of them would amount to a conversion. It is immaterial, therefore, which, if either of them, was established. The principal question made in argument by the defendant's counsel is, did the Judge do right in supposing, that the evidence was such as to authorize the jury to consider and to find affirmatively in reference to them. If there was evidence which might fairly tend to establish those facts, the Judge could not well refuse to put the cause to them for their consideration as to its effect, though in his judgment it might not have been entirely sufficient for the purpose.

Now, was there evidence of that character? According to the testimony of Noyes, the defendant claimed to have made an absolute purchase of the sheep of Benjamin Scott; and admitted that he at first objected to the purchase, because he knew there was difficulty between Benjamin and the plaintiff, his sister, "about the property on the old farm." But on

being assured by Benjamin, that he had a perfect right to sell them, he bought them of him, and gave his note for the price. George Ellis, who seems to have been present, testified that the defendant bought the sheep of Benjamin, who assured the defendant that he had a right to sell them as administrator of his father's estate, the defendant at first having expressed some fears that there would be trouble about it. Here was evidence, to some extent at least, tending to show that the defendant was not unapprised, that there was a controversy between the plaintiff and her brother about the property. At the trial, the defendant introduced Benjamin as a witness, who swore that he did not consider himself as having sold the sheep to the defendant, but that he merely left them with him, and took a memorandum, which he produced, in the following words: — "Received of Benjamin Scott ten sheep at $16,50," the language of which is sufficiently inexplicit and equivocal, perhaps, to be used as evidence of a sale or not, as might suit the convenience of the parties. And Benjamin testifies, that several weeks after he had so left the sheep, on receiving a message from the defendant that they had been demanded of him by the plaintiff, he took them from him. And Benjamin further testified, that Samuel Pool had agreed to indemnify the defendant for the damages and costs in this suit, and that it was understood between him and Pool that he (Benjamin) was to indemnify Pool.

Thus, the conduct of the defendant, at the time of the demand made by the plaintiff; the evidence derived from his declarations at that time of an absolute sale to him; his proof, by Benjamin, that there was no intended sale; the equivocal writing given by him to Benjamin; his indemnity procured by Benjamin from Pool; his acknowledgment, that he knew there was difficulty between Benjamin and the plaintiff concerning the property on the old place; his fears, showing that he knew the sheep came from there; all these circumstances taken together, might well be regarded by the Judge as tending to show collusion between the defendant and others to baffle the endeavors of the plaintiff in attempting to regain her property.

The jury therefore may be regarded as having found property in the plaintiff, and a conversion of it by the defendant, upon evidence legitimately submitted to them for the purpose ; and the exceptions are overruled.