VINTON H. PARKER ET UX. *v.* FRANK L. CONE ET AL.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 3, 1933.

*Evarts & Perkins* and *Marvelle C. Webber* (of counsel) for the defendants.

*Frank E. Barber* and *Ernest W. Gibson, Jr.* (of counsel) for the plaintiffs.

SLACK, J. The plaintiffs and the defendant, Weston Heights, Inc., hereinafter called the corporation, own adjoining farms which extend westerly from the Connecticut River valley onto Ascutney Mountain. The division line between them is straight and runs in an easterly and westerly course. For about half its entire length the easterly end of the line is marked by a fence and there is, and for many years has been, a plainly visible marker at the northwest corner of plaintiffs' farm, which is the southwest corner of the corporation's farm. The corporation bought its farm in July, 1929, from the defendant Cone, but it logged thereon the winter before, as well as the winter after, it acquired its title. This work was done under the immediate supervision of one Gould. He acted under orders and instructions from Cone, who was the president and chief executive officer of the corporation, and owned most of its capital stock. Gould had previously owned both farms. He owned plaintiffs' farm seven or eight years and the corporation's farm ten or twelve years. He logged on both farms while he owned them, and knew in a general way where the division line between them was located. While he owned plaintiffs' farm, he sold to one Curley a "square .chunk" of standing timber which was located between the two places where the cutting hereafter referred to was done. In his logging operations on the corporation's farm during the winters of 1928-29 and 1929-30, Gould cut, or caused to be cut, from two places on plaintiffs' farm, a large number of logs which were taken to the corporation's mill and sawed into lumber. The corporation used part of this lumber and sold the rest, but never accounted to plaintiffs for any of it. The plaintiffs first learned what had happened the latter part of January, 1930, after all of the logs had been delivered at the corporation's mill, and most of them had been sawed. They immediately notified Cone, and took steps to ascertain the extent of the cutting that had been done on their farm. On January 30, 1930, the plaintiff, Vinton Parker, reported to Cone what his investigation showed, and told him that he wanted the lumber or pay for it. Parker testified that Cone then said that he "would stand behind Gould or anything that he had done." Plaintiffs'

evidence tended to show further that at that time Cone agreed to go onto the mountain to "see the situation," but that he never went; that the following summer Parker again tried to get Cone to go onto the mountain to see what had been done, and that Cone then got mad and told Parker to "go to hell, lumber and all." It appeared that in December, 1930, the plaintiffs brought a suit against Cone and Gould under G. L. 6956, and had judgment therein against both in the Windsor county court; that the judgment against Cone was reversed and judgment entered in his favor by this Court; that the judgment against Gould was affirmed by this Court, see *Parker* v. *Cone et al.*, 104 Vt. 421, 160 Atl. 246, and that part of that judgment, how much did not appear, had been paid.

This action is trover for the sawed lumber. The plaintiffs had a verdict and judgment below against both defendants, and the.case is here on the latter's exceptions.

The first question is whether the plaintiffs are entitled to recover the value of the sawed lumber at the corporation's mill, the amount for which they had judgment, or only the value of the logs at their farm? We think that in the circumstances they are entitled to recover the former amount. This conclusion is supported by *Hassam* v. *Safford Lumber Co.*, 82 Vt. 444, 454; 74 Atl. 197; *Whiting* v. *Adams*, 66 Vt. 678, 688, 30 Atl. 32, 25 L. R. A. 598, 44 A. S. R. 875; *E. E. Bolles Wooden-Ware Co.* v. *United States*, 106 U. S. 432, 27 L. ed. 230, 1 Sup. Ct. 398; *Nesbitt* v. *St. Paul Lumber Co.*, 21 Minn. 491; *Tuttle* v. *White*, 46 Mich. 285, 9 N. W. 528, 41 A. R. 175. See, also, Sutherland on Damages (4th ed.) 1126-1128. The evidence clearly justified the conclusion that Gould did not cut plaintiffs' timber through such a mistake as the law recognizes, *Davis* v. *Cotey*, 70 Vt. 120, 39 Atl. 628, or through inadvertence, but that he acted knowingly or in reckless disregard of plaintiffs' rights. As we have seen, he had owned both farms for several years, he had logged on both, and the major part of the cutting complained of was on land so located with reference to the land on which the timber stood that he sold Curley that he must have known that he was cutting on plaintiffs' land if he gave any attention to the matter. He was the corporation's agent or servant. He was acting within the scope of his employment, and in the furtherance of the corporation's business, *Gutzwiller*

v. *American Tobacco Co.,* 97 Vt. 281, 122 Atl. 586; *Greenough* v. *United States Life Ins. Co.,* 96 Vt. 47, 117 Atl. 332; *Ploof* v. *Putnam,* 83 Vt. 252, 75 Atl. 277, 26 L. R. A. (N. S.) 251, 138 A. S. R. 1085; *Andrus* v. *Howard,* 36 Vt. 248, 84 A. D. 680, and the corporation had the benefit of what he did. Whether he had prior authority to cut the timber is immaterial, if, after the cutting, the corporation ratified what he had done, *Martin* v. *Rutledge,* 94 Vt. 258, 110 Atl. 222, and the evidence justified the conclusion that it did. Since Cone was the president and chief executive officer of the corporation what he said and did tended to show a ratification by the latter. *Bishop* v. *Readsboro Chair Mfg. Co.,* 85 Vt. 141, 81 Atl. 454, 36 L. R. A. (N. S.) 1171, Ann. Cas. 1914B, 1163; *Lake Shore and Mich. S. R. R. Co.* v. *Prentice,* 147 U. S. 101, 37 L. ed. 97, 13 Sup. Ct. 261. The attitude of the corporation to the present time has been that it would stand behind Gould or anything that he had done, and that the plaintiffs could go where Cone told Parker they could, lumber and all. In the circumstances, the corporation is to be regarded as the original wrongdoer. The judgment so far as the amount is concerned must stand.

▮ Gould testified on behalf of the defendants that at the time the timber in question was cut there was a line of demarcation south of where part of it stood which was shown by the size of the timber, that the timber south of that line was smaller and apparently younger than that north of such line. He was then asked: ''What, if anything, did that indicate to your mind?'' This evidence was excluded subject to the exception that it was a natural and reasonable inference that that was the dividing line between the properties. Assuming, but not deciding, that the exclusion of this evidence was error, the defendants were not harmed thereby, since they were given the opportunity later to show anything that the witness did, or any observations that he made, to determine the location of the division line between the two farms. That was all that they were entitled to. The exception is not sustained.

At the close of all the evidence the defendants moved for a directed verdict on the ground that the conversion, if there was one, took place when the logs were removed from plaintiffs' land, and that the goods converted, if any were, were the logs

and not the lumber described in the declaration. The motion was denied and the defendants excepted.

It is claimed that for the reason stated in the motion there is a fatal variance between the declaration and the proof. The only case cited in support of this claim is *Derragon* v. *Rutland,* 58 Vt. 128, 3 Atl. 332. That case is so unlike this one, in point of fact, that we do not regard it as especially helpful to the defendants.

The declaration alleges the conversion of 300,000 feet of lumber, consisting of house and mill flooring, etc., on June 15, 1930. The evidence tended to show the facts first herein stated.

No question was made below, nor is any made here, but that the lumber described in the declaration was cut from the logs that were taken from the plaintiffs' land, and that this had been done before the date of the alleged conversion. The logs were the plaintiffs' property, not only when they were removed from their land, but ever afterwards, until they did something to divest themselves of their title. So. too, was the lumber that was cut from such logs. The destruction of the identity of the logs by sawing them into lumber did not affect the plaintiffs' title. They owned the logs; they likewise owned the lumber. The declaration declared for a conversion of the logs in their converted, rather than in their original, form.

■ We think it immaterial in the circumstances whether the property was described as logs, timber, lumber, or flooring. All that is required in a declaration in trover is that the property be described with such reasonable certainty that it may be known what property is meant, and that the defendant. may be protected against another suit for the same cause of action. *Williams* v. *Williams,* 112 Me. 21, 90 Atl. 500, Ann. Cas. 1916D, 928. No one, as far as appears, ever entertained any doubt as to what property was meant by this declaration, and the judgment herein furnishes the defendants the same protection that the judgment would if the property had been described as logs instead of lumber. Extraneous evidence would be required in either case to identify the property in issue. In *High* v. *State Board of Education,* 66 Fla. 175, 63 So. 712, the case most nearly in point of any that we have found, the declaration alleged that defendant cut and removed from plaintiffs' land a quantity of *timber* and made therefrom *sawed lumber,*

the property of the plaintiff, which *lumber* the defendant converted to his own use. The defendant requested the court to charge the jury that the conversion was complete when the logs were moved from plaintiffs' land and that for that reason there could be no recovery in trover for the value of the logs when subsequently converted by the wrongdoer into lumber. The court, after stating defendant's request, said: ''In other words, if the state had sued. for logs, it could have recovered, if the trespass was wilful, for the value of the lumber, but that as it names the property, wrongfully and wilfully converted, lumber, the wrongdoer may defeat recovery by showing that he had theretofore committed a completed conversion. In the criminal law such refinements still obtain, but they have little place these days in the administration, by the appellate courts, of the civil law.'' The recovery under the declaration in that case was sustained. The exception is without merit.

At the close of all the evidence Cone moved for a directed verdict on the grounds that the evidence failed to show that Gould or any of the men working under him acted as his agents; that the evidence failed to show that he, in his individual capacity, directed, authorized, or ratified any of the acts alleged or proved to have been done by Gould, or that he, in his individual capacity, received any benefit from the timber taken from the plaintiffs' land. The motion was denied, and he excepted.

■ ■ There was no evidence that Gould or any of the men working under him were acting as agents of Cone, and consequently there could. be no ratification by the latter in his individual capacity of what they did, *Parker* v. *Cone et al., supra;* neither was there any evidence that Cone, in his individual capacity, directed or authorized the cutting of the timber in question, or received any ·benefit from it. But even so, it does not follow that the motion should have been granted. If Cone in his individual capacity aided or abetted the corporation in keeping plaintiffs' property from them, he was liable. *Hill* v. *Bedell,* 98 Vt. 82, 126 Atl. 493, and cases cited; *Scott* v. *Perkins,* 28 Me. 22, 48 A. D. 470; *McPheters* v. *Page,* 83 Me. 234, 22 Atl. 101, 23 A. S. R. 772; *Star* v. *Bankers Union, etc.,* 81 Neb. 378, 116 N. W. 61, 129 A. S. R. 684; 26 R. C. L., p. 1138; Bowers on Law of Conversion, par. 306. The court, after calling the jury's attention to the fact that plaintiffs claimed that Cone's relations

■

to the wrongful act were such that he was liable, charged that: "A president or other officer of a corporation may make himself personally liable for a wrong committed by the corporation if, with knowledge of the facts, he knowingly does some act in furtherance of the wrong; or if he intentionally and knowingly advises or directs the wrong to be done." And later: "Has Cone by his conduct so conducted himself by aiding or assisting in the commission of this wrong by the corporation, knowing the facts, that he has made himself personally liable under the rule we have given you." This was the only ground of liability on the part of Cone that was submitted to the jury. The charge regarding this issue was not excepted to, nor was the verdict challenged on any ground. Since it was thus tacitly conceded that this issue was for the jury, there was no error in denying the motion. In the circumstances, it will be presumed that the verdict was in accordance with the evidence and the instructions given.

The argument that Cone's position in this case is no different than it was in the case of *Parker* v. *Cone et al., supra,* wherein it was held that he was not liable, is unsound. The attempt to hold Cone in that case was predicated on the theory that Gould acted as Cone's agent, and it was held that the only conclusion that could be drawn from the evidence was that Gould acted as agent of the corporation, and that, since that was so, there could be no ratification by Cone that would bind him individually.

The defendants offered in evidence the original writ, the amended declaration, and the docket entries in the suit of these plaintiffs against Cone and Gould hereinbefore mentioned for the purpose of showing, in effect, that in that suit, which it was claimed in the offer was for the same cause of action, Cone had a judgment in his favor, and that a judgment was obtained against Gould which, in part, had been satisfied. The evidence was excluded and the defendants excepted.

All that is said regarding this exception is that the files should have been admitted "to permit raising questions as to the effect the judgment in that suit has upon the suit at bar"; that plaintiffs should make but one full recovery, and that it was error not to permit defendants to show what had been paid on the judgment against Gould. It is not even intimated what questions defendants desired to raise regarding the effect of the

judgment in that case that they were prevented from doing by the exclusion of the files therein, and none of the assertions or claims made respecting the offered evidence or its exclusion are supported by argument or citation of authorities. We have repeatedly held that questions briefed in this manner will not be considered. *Dependents of Vlahos* v. *Rutland Restaurant,* 104 Vt. 188, 157 Atl. 832, and cases cited.

This disposes of all questions raised by the exceptions.

*Judgment affirmed.*