NEW ENGLAND ACCEPTANCE CORPORATION *v*. LEE PAGE NICHOLS.
May Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1939.

*Christopher A. Webber* and *Vernon J. Loveland* for the plaintiff.

*William R. McFeeters* and *Stanley L. Burns* for the defendant.

JEFFORDS, J. In October, 1935, the plaintiff, a New Hampshire corporation, and defendant entered into an agreement by the terms of which the plaintiff was to finance loans placed by the defendant. The defendant was to investigate the borrowers, make out the necessary papers including the notes and mortgages securing the loans, attend to collections, report weekly on same, and remit weekly such collections as he had received less his commission which was agreed to be 5%. The defendant at the time this agreement was made was operating a finance business in Rutland under the name of the Eastern Finance Company. The defendant was to pay all the ordinary operating expense of the Rutland office. The checks were drawn by the plaintiff to the order of the borrowers and sent to the defendant to be delivered by him to them. The notes and mortgages were made out to the Eastern Finance Company and by it endorsed and turned over to the plaintiff.

In February, 1936, the defendant and others formed a corporation, Eastern Finance Company, Inc., hereinafter called the corporation, of which defendant was elected treasurer and continued as such during all times here material. This corporation took over the business of the Eastern Finance Company and

the plaintiff continued to do business with the corporation under the same arrangement as with Nichols.

It would seem from the transcript that some short time prior to April, 1937, the plaintiff became licensed to do business in Vermont. It then wrote the defendant that in the matter of financing insurance premiums it would do business in its own name and that all money collected on same should go into a separate account but that the arrangement previously entered into as far as collateral loans were concerned would not be disturbed.

The plaintiff and defendant and later the corporation each kept a set of cards showing the status of the various loans as regards the amounts due from the borrowers, etc. Discrepancies began to appear between the amounts shown due on the cards of the plaintiff and on those of the corporation. Some remittances were made late and some checks were received by the plaintiff from the corporation which were protested when presented for payment.

In April, 1937, the plaintiff received a check which was protested and Newcombe, treasurer of the plaintiff, wrote defendant concerning it. Nichols came to the home office of plaintiff and there told Newcombe that he wouldn't be able to make the check good for a few days because he was short of funds. He also said that some of the records were not in balance because he had not remitted the money which he had collected. He said he did not know how much the difference was and that he had used it for business and living expenses and anything that might come up. This was the first time that the plaintiff knew that money collected had not been remitted but used for some other purpose.

Later in the same month a check up was made in Rutland between the cards of plaintiff and the corporation showing $2,731.76 collected and not remitted, all from the collateral loan account. This difference was agreed to by the plaintiff through its treasurer and by the corporation through its treasurer, the defendant. It was also agreed that from this amount there were certain credits to be applied as commissions to the corporation and the accounting date was set as of April 19, 1937.

The plaintiff brought this action of tort alleging in its complaint the arrangement it had with the defendant and later with the corporation substantially as hereinbefore set forth. It also

alleged that the money collected was the money of the plaintiff and that the only interest Nichols or the corporation had was a commission.

The two final allegations were as follows:

"That it was at all times the duty of said defendant, Lee Page Nichols, while doing business as Eastern Finance Company and while acting as agent and collecting monies for the Eastern Finance Company, Inc. on notes re-financed by the New England Acceptance Corporation to turn over to the plaintiff all sums of money collected after deduction of commissions.

"That nevertheless the defendant, Lee Page Nichols, violated his said duty in that he did wilfully and fraudulently convert to his own use the sum of $2,455.76, which said money he held in trust for said plaintiff; and though often requested by the plaintiff to deliver said sum so owing, has refused and neglected so to do."

At the close of the plaintiff's case the defendant's motion for a directed verdict was granted. The case comes here on exceptions of the plaintiff to the granting of this motion.

There were several grounds to the motion but they may be properly grouped under two heads and have been so treated by both parties in their briefs. The first was in effect that the complaint only set forth a contract action and inasmuch as the writ issued as a *capias* with the arrest of the body of the defendant thereon the court had no jurisdiction of the person of the defendant. The second ground in effect was that the evidence failed to show a conversion of the money by the defendant as the evidence disclosed that the money when collected was held by the corporation only under a contractual obligation to remit to the plaintiff a certain portion of the same.

Passing over the question of whether the first ground was properly one for a motion for a directed verdict, inasmuch as it raises a jurisdictional question, we will consider it, for if the complaint was, in fact, in contract, the writ having issued as a *capias* with the arrest of the defendant thereon, the court was without jurisdiction of the process. *Howard* v. *Chapman,* 101 Vt. 152, 141 Atl. 686; *Roy* v. *Phelps,* 83 Vt. 174, 75 Atl. 13.

The defendant argues that the allegations in the complaint merely set forth an action in contract. That if the plaintiff had any right to arrest the defendant on the writ in this case, such

right, because of the Provisions of P. L. sec. 2170 prohibiting the arrest of a person on mesne process issuing on a contract, could only be exercised under P. L. sec. 2178. This latter section provides in substance that when a plaintiff files with the magistrate issuing the writ in the case an affidavit stating that the defendant is the receiver of money of the plaintiff in a fiduciary capacity, which he has not paid on demand, and that the action is instituted to recover the same, the writ may issue against and be served upon the body of the defendant. The defendant claims that the allegations in the complaint only go to the length of showing money held by the defendant under a contract and in such fiduciary capacity, and as no such required affidavit was filed the process was void.

But the allegations go beyond the scope claimed by the defendant. Taken as a whole they plainly charge the defendant with collecting money belonging to the plaintiff which when collected the defendant held in trust for the plaintiff with the duty of turning over the same to it. That in violation of this duty the defendant fraudulently converted said trust funds to his own use.

Under our Practice Act the facts stated entitled the plaintiff to a recovery in a tort action. Under a similar set of facts it was so held in *Howard* v. *Chapman, supra,* and in *Reed* v. *Hendee,* 100 Vt. 351, 137 Atl. 329. In the latter case an executor had settled his final account and had been ordered by the probate court to pay over to the plaintiff a specified sum of money. Instead of doing so, the defendant converted the money to his own use. In the former case the defendant did not deposit money belonging to the plaintiff as directed but converted it to his (defendant's) own use.

The basis of this action is not a broken promise but the alleged subsequent appropriation of the plaintiff's money which was a fraud upon the plaintiff. See *Howard* v. *Chapman, supra; Reed* v. *Hendee, supra*; *Miller* v. *Belville,* 98 Vt. 243, 126 Atl. 590; *Snyder* v. *Parmalee,* 80 Vt. 496, 68 Atl. 649. In the Miller case in an action of tort and in the Snyder case in an action of case the defendants were held liable for disposing of property held by them in fiduciary capacities for the plaintiff. We have examined all of the cases cited by the defendant on this point and none of them apply to the situation here.

■ We pass now to the second ground of the motion and in considering it we take the evidence in the light most favorable to the plaintiff, the party against which the motion was made. *Pacific Lumber Agency* v. *National Aircraft Corporation,* 108 Vt. 10, 182 Atl. 192. In treating this point we will assume, as have both parties in their briefs, that all of the shortage occurred after the formation of the corporation. The question here is: To whom did the money belong when collected? Was it the plaintiff's or was it the corporation's? The defendant argues that it then belonged to the corporation under a contractual relationship between it and the plaintiff of debtor and creditor.

■ If the evidence on this issue was so conclusive in character in favor of defendant's contention as to admit of no opposing inferences the court could properly have based its direction of a verdict on this ground but otherwise this question was for the jury. *Pacific Lumber Agency* v. *National Aircraft Corporation, supra.*

■ The defendant argues that the fact that the corporation was to receive a commission for its services shows that only a debtor and creditor relationship was established as to the money collected. That it could equally as well be said that the only interest the plaintiff had in the money was 95% of the same as to say that the only interest the corporation had in it was its 5% commission. That if some of the borrowers had remitted direct to the plaintiff the only action the corporation would have to recover from the plaintiff would be in contract and impliedly that it thus follows that if the corporation failed to remit the 95% the plaintiff could only recover of it in contract.

This reasoning is not sound. The relationship between plaintiff and defendant at its inception was that of principal and agent with the ordinary method of payment of the agent by commission. Unless this arrangement was afterwards changed by agreement or consent of the parties to it the money when collected belonged to the plaintiff, the principal, with the duty on the part of Nichols and later of the corporation to remit the same to the plaintiff less his or its commission for services rendered. *Wells* v. *Collins,* 74 Wis. 341, 43 N. W. 160, 5 L. R. A. 531. See, also, as to the relationship of the parties, *Kellogg* v. *Griswold,* 12 Vt. 291.

The defendant insists that if the arrangement at the begin-

ning was not that of debtor and creditor it was later changed
to that status by agreement or consent of the plaintiff, and he
calls to our attention certain evidence which he argues supports
this claim. He points out in support of this contention that the
plaintiff understood that the money when collected would be de-
posited in the general funds of the Eastern Finance Company
and that it knew that this method of deposit continued right
along. He stresses the fact that for several months prior to
April, 1937, the plaintiff knew of the delinquencies before men-
tioned in the way of lateness as to reports and remittances, in-
sufficiency of funds with which to honor remitting checks and
the discrepancies as to the two sets of cards. He lays much
emphasis on the different set up as to insurance premiums and
the leaving of that as to collateral loans as before. He argues
that all such being aquiesced in by the plaintiff for so long a
time shows conclusively an agreement on its part to a change
to a debtor and creditor relationship.

 The rule is clear that funds of a principal received
by an agent are held by the latter in trust for the former. The
agent is under a duty not to apply such funds to any purpose
not authorized by the terms of the agency. 2 Am. Jur. 225, 226;
*Riehl et al.* v. *Evansville Foundry Assoc.,* 104 Ind. 70, 3 N. E.
633; *Bills* v. *Hyde,* 49 S. D. 18, 205 N. W. 708.

██ It is equally clear that it is the duty of the agent to
keep the property and funds of his principal separate from his
own. 2 Meechem on Agency, sec. 1335, 2 Am. Jur. 225, sec. 284.

██ By agreement of the principal, express or implied, how-
ever, the agent may use such funds for his own benefit, *Arnold*
v. *Somers,* 92 Vt. 512, at 521, 105 Atl. 260, and he may treat
the same as his own by an agreed change in the relationship
from that of principal and agent to one of debtor and creditor.
*Wells* v. *Collins, supra; People ex rel. Nelson* v. *People's Bank
& Tr. Co.,* 353 Ill. 479, 187 N. E. 522, 89 A. L. R. 1328. The
inquiry is whether there was such a change in the case before us.

██ The fact that the corporation deposited the money col-
lected in its name did not necessarily change the relationship of
principal and agent. See the *Nelson* case, *supra,* and also *Home
Land & Loan Co.* v. *Routh,* 123 Ark. 360, 185 S. W. 467, Ann.
Cas. 1917C, 1142.

 No such change could be made without the consent

of the plaintiff as the relationship of debtor and creditor is a contractual one and bilateral in its inception. In order to hold that such a change was made it should clearly appear that the plaintiff intended that it should be brought about and agreed to the same. See to this effect, *People ex rel. Nelson* v. *People's Bank & Tr. Co., supra*; 2 Am. Jur. 225, sec. 282. The question then is, as far as the claimed participation of the plaintiff in the alleged change is concerned, whether its consent to the manner of deposit of the funds and the other facts stressed by the defendant show an implied agreement on the part of the plaintiff to such change in relationship.

The defendant in his brief on this point presents the evidence in the light most favorable to him rather than to the plaintiff. He ignores the fact that Newcombe gave testimony tending to explain why relations were continued after knowledge of some of the facts relied upon by the defendant. No good purpose would be served by reviewing the evidence on this issue. It is sufficient to say that it was not so conclusive in favor of the defendant as to warrant a holding as a matter of law that the plaintiff had agreed to a change in relationship from that of principal and agent to one of debtor and creditor. At the most there was a question for the jury on this issue.

The defendant in his brief in support of the granting of the motion claims that the evidence as to damages was too inadequate to afford a proper foundation for a verdict for the plaintiff. This point was not raised below but inasmuch as we will sustain a ruling upon any legal ground, whether or not it has been brought to the attention of the trial court, *McNamara* v. *Pickett,* 109 Vt. 500, 1 Atl. (2d) 716, we give this claim consideration.

The defendant apparently argues that the plaintiff should have proceeded against the corporation rather than Nichols. But an officer of a corporation is liable for a tort in which he has participated and the person wronged may proceed against him though the corporation may also be liable. 13 Am. Jur. 1018, sec. 1086. He is personally liable for his acts which constitute a conversion of the property of a third person, and it is no answer to such liability that the act was done while the officer was acting for the corporation. *Parker* v. *Cone,* 105 Vt. 426, 433, 168 Atl. 715; 13 Am. Jur. 1026, sec. 1095; 14a C. J.

180, sec. 1958. See, also, *Virginia-Carolina Chemical Co.* v. *Floyd,* 158 N. C. 455, 74 S. E. 465, a case with facts very similar to those here.

The defendant attempts to point out various reasons why the evidence failed to connect him with the total shortage. His admissions to Newcombe and those of a like nature to witness Perry, however, were sufficient to take this issue to the jury.

Finally the defendant claims that because of the credit for commissions before mentioned and which appeared on plaintiff's exhibit 2, inasmuch as this exhibit furnished the only evidence as to the amount of the shortage, the amount of damage was left too speculative to submit to the jury. This claim is without merit. This exhibit showed that $2,731.76 had been collected and not remitted. Whatever were the commissions therein referred to they belonged to the corporation and not to the defendant. The only way that the defendant could take advantage of them in the way of reducing the amount of damage would be by some arrangement with the corporation. Apparently such an arrangement was had, for the plaintiff in its complaint only claims that the defendant converted $2,455.76 as shown by an audit made subsequently to the one of April. In any event, we would not affirm merely because of this claimed shortage of proof as to damages but would remand in order to prevent a failure of justice, for it is probable that, if there was any shortage in this respect, the plaintiff will be able to make a better showing at another trial. *Shea* v. *Pilette,* 108 Vt. 446, 455, 189 Atl. 154, 109 A. L. R. 933; *Weinberg* v. *Roberts,* 99 Vt. 249, 131 Atl. 14.

From what we have said it is apparent that the court committed error in directing a verdict for the defendant.

*Judgment reversed and cause remanded.*